22858.   SECURITY LIFE & TRUST COMPANY et al. v. SMITH, Administratrix.

CANDLER, Justice.   James C. Smith borrowed $3,600 from Rossville Federal Savings & Loan Association on July 29, 1959, and as security for repayment of such loan he conveyed to the lender certain realty in Walker County.   His deed contained a power of sale which authorized the grantee or its assigns to sell the land at public sale if the debt it secured was not paid according to the terms of the loan note.   Simultaneously with the loan transaction, Smith purchased from Security Life & Trust Company a life insurance policy in the amount of $3,600 and paid the premium charged therefor.   The policy named the Rossville Federal Savings & Loan Association as beneficiary and the policy was delivered to the beneficiary.   It requires the beneficiary on the death of the insured to apply the insurance proceeds to the payment of the amount then due on the insured's aforementioned note and any balance due thereon to the surviving widow of the insured, if any, and if none, to his estate.   The policy also provides that self-destruction on the part of the insured, whether sane or insane, within two years from its date, is a risk not assumed by the insurer.   The insured died on August 9, 1960, while the policy was of full force and effect.   The insurer refused to pay the policy, claiming that the insured's death resulted from suicide within less than two years from the date it was issued.   At the time of the insured's death, there was a balance of $3,530.51 due on his note to Rossville Federal Savings & Loan Association and the association transferred and assigned the note to the insurer on payment to it of that amount.   It also transferred and assigned to the insurer the security deed and conveyed to it title to the land described therein.   The insurer as such holder of Smith's note claiming that it was in default, published a notice in the official gazette of Walker County that it would sell the land involved at public outcry on a specified sale day.   Mrs. Emma Dean Tucker

Smith, as administratrix of James C. Smith's estate, filed an equitable suit in Walker County Superior Court against Rossville Federal Savings & Loan Association and Security Life & Trust Company. Her petition, in addition to the above stated facts, alleges: She is the widow of James C. Smith and also administratrix of his estate. He died on August 9, 1960, and the defendants were duly notified of his death. The policy of insurance purchased by him from Security Life & Trust Company was in full force and effect at the time of his death. The $3,530.51 which Security Life & Trust Company paid Rossville Federal Savings & Loan Association on December 5, 1960, was full and complete payment and satisfaction of the note and security deed which Smith gave the savings and loan association but the association refused to apply it to the payment and satisfaction of Smith's note and to cancel the security deed of record. The transaction between the savings and loan association and the insurer whereby the latter after the death of James C. Smith paid the former the amount due on the Smith insurance policy and took from it a transfer and assignment of Smith's note and security deed was a plan and scheme on the part of both to perpetrate a fraud on the estate of James C. Smith by misapplying insurance funds which legally belonged to his estate and should have been paid by the insurer to the beneficiary of the policy for application by it to the payment of the Smith note. The defendants are taking an inequitable, unjust and unfair advantage of petitioner as the administratrix of James C. Smith's estate and unless prevented from doing so they will thus inflict upon his estate an irreparable injury. The petition prays for process; that a sale of the land described in the security deed be enjoined; that the insurer be enjoined from assigning, selling or in any wise disposing of the Smith note and security deed; and that the savings and loan association be required to apply the money it received from the insurer to the payment and satisfaction of the note and security deed it obtained from James C. Smith.

The defendants demurred to the petition as a whole on the ground that it failed to state a cause of action for any of the relief sought. They also demurred to several paragraphs of the petition. All of these demurrers were overruled, except the one to paragraph 10 which alleges that the defendants were fully informed and notified of the death of James C.

Smith. This paragraph was amended by alleging that the defendants were informed and notified of the death of Smith "under the terms and conditions of the insurance policy." After this amendment was allowed, the demurrers were renewed to the petition as amended and paragraph 10 was further demurred to on the ground that the amendment thereto did not allege how or in what manner the defendants were duly informed and notified of the death of James C. Smith under the terms and conditions of the insurance policy. All of the demurrers were overruled and there is an exception to that judgment.

The defendant insurer answered the amended petition and averred that there was no obligation on its part to pay the policy issued to Smith because his death resulted from suicide within less than two years from the date he purchased from it the insurance policy on his life. It also averred that it purchased as an investment the note and security deed Smith gave the savings and loan association and paid it $3,530.51 for them. It admitted that it was advertising the Smith land for public sale and intended to sell it for the purpose of satisfying the note and security deed it purchased from the savings and loan association.

The defendant savings and loan association answered the amended petition and admitted that it sold and assigned the note and security deed it obtained from James C. Smith to Security Life & Trust Company and was paid $3,530.51 for them. It averred on information and belief that Smith committed suicide within less than two years from the date he purchased his policy of life insurance from the insurer. It admitted that the life insurance policy which James C. Smith purchased from the insurer named it beneficiary and that it, as such beneficiary, was required by the terms of the policy to apply any proceeds derived therefrom to the payment and satisfaction of the amount then due on the note and security deed which Smith gave it on July 29, 1959, and the balance to his widow, if one, and if none to his estate. It averred that it sold its note and security deed after the death of Smith to the insurer and denied that it, as beneficiary of the life insurance policy, received any proceeds therefrom due the insured.

On the trial and after the introduction of evidence closed, the defendants moved for a directed verdict in their favor on the

ground that such a verdict was demanded by the evidence. This motion was denied and the jury found by its verdict that the plaintiff was entitled to the injunction prayed for; that the defendant insurer should pay the amount due on the policy to the beneficiary named therein; and that the beneficiary should apply the proceeds of the policy to the payment and satisfaction of Smith's note and security deed. The jury also found that there was no evidence of conspiracy or fraud as alleged in paragraph eleven of the plaintiff's petition. A decree was accordingly entered and the Clerk of the Superior Court of Walker County was directed by the decree to cancel and satisfy of record the security deed. The defendants in due time moved for a judgment notwithstanding the verdict and they also moved for a new trial on the usual general grounds and later amended their motion by adding special grounds. Both motions were overruled and movants excepted to those judgments and sued out a writ of error to this court. The evidence material for a decision by this court will be stated in the opinion. *Held:*

1. The facts alleged in the petition, as amended, state a cause of action for the relief sought; and since they do, the court did not err in overruling the demurrers interposed thereto.

2. There is no merit in the contention that the court erred in overruling the defendants' motion for judgment in their favor notwithstanding a verdict in favor of the plaintiff. The sole purpose of a motion for judgment notwithstanding the verdict is to permit the trial judge to review and reconsider his ruling on an antecedent motion for a directed verdict. *Hearn v. Leverette,* 213 Ga. 286 (99 SE2d 147). It is well settled in this jurisdiction that a verdict cannot be directed except where there is no material conflict in the evidence and where the evidence introduced with all reasonable deductions or inferences which may be drawn therefrom demands a particular verdict. *Code Ann.* § 110-104. In this case the insurer refused to pay the amount due on the insurance policy it had issued to James C. Smith only for the reason, as it contended, that his death resulted from suicide within two years from the date he purchased his policy. On this issue the evidence was conflicting and a finding of suicide by the jury was not demanded. Since the defendant's motion for a directed verdict was properly overruled, it necessarily follows that it was also proper to deny their motion for judgment notwithstanding the verdict.

3. The defendants offered and the court allowed in evidence a proof of loss which the defendant savings and loan association, as the beneficiary named in the policy, filed with the insurer on September 7, 1960. It shows that the insured died from an undetermined cause on August 9, 1960. They also tendered and the court, over plaintiff's objection thereto, refused to allow in evidence several other writings which the defendant savings and loan association obtained from various persons a month or more after the proof of loss had been filed. These writings, some of which are purely hearsay, are statements obtained from various people concerning the death of the insured and the cause thereof. The policy purchased by Smith requires that proofs of loss be filed with the insurer and compliance with that provision of the policy is expressly made a condition precedent to the filing and maintenance of an action to enforce payment of the policy. Special ground 1 of the motion for new trial alleges that the court erred in refusing to allow these statements in evidence. We do not think this was error. In *Travelers Ins. Co. v. Sheppard*, 85 Ga. 751, 761 (12 SE 18), this court in discussing and dealing with the function and purpose of a proof of loss held that "such evidence has but one legitimate object, and that is to meet the condition of the policy as a preliminary to bringing action where voluntary payment has been denied. In supporting an action, beyond clearing the way for it, the preliminary proof has no efficacy whatever." That case cited and relied on the holding in *Southern Ins. &c. Co. v. Lewis*, 42 Ga. 587, 594, where the insured sought to recover a loss sustained by fire and it was there pointed out and held: "One of the conditions of the policy is, plaintiffs shall furnish proof of their loss to the company, and in case of suit brought, we hold such proof is held strictly to the effect of showing his compliance with his contract expressed in the policy, but is not in itself evidence either of ownership or destruction, or of the value of goods destroyed. These questions put in issue by the pleadings must be supported by the other proof, subject to cross examination upon the trial." The defendants do not question the fact that Smith, the insured, died on August 9, 1960—they defended the action solely on the ground that his death resulted from suicide.

4. Special grounds 3, 4 and 5 complain of different portions of the charge. Ground 3 alleges that the judge erred in his

charge respecting the right of the holder of a security deed to transfer it to another. Ground 4 alleges that he erred in the charge when he referred to the case as one brought by the widow of the insured instead of the administratrix of the insured's estate. And ground 5 alleges that he erred in charging on the subject of conspiracy. These portions of the charge do not show reversible error.

5. On the ground that it was argumentative, confusing and contradicted the terms of the policy, the defendants assigned error on a lengthy quoted portion of the charge whereby the judge undertook to state the contentions of the plaintiff as made by her amended petition. There is no merit in this special ground of the motion for new trial. The charge as a whole fairly and correctly stated the contentions of the plaintiff, as alleged in her amended petition, and the judge stated to the jury that the petition had been read to them, that it would go out with them, and that they could read it if they saw fit to do so.

6. The general grounds of the motion for new trial do not require a reversal. Suicide by the insured within two years after the policy was purchased by him was the only defense which the insurer asserted for its refusal to pay the policy. When Smith's death was shown, there was a "presumption against suicide which the law recognizes as arising out of the instincts of nature, one of which is the love of life." *Belch v. Gulf Life Ins. Co.*, 219 Ga. 823 (136 SE2d 351), and the several cases there cited. The evidence which the defendants introduced constitutes and is strong proof that the insured's death resulted from carbon monoxide intentionally inhaled by him while in the seat of his truck with the glass in one window down and with the motor running on a Sunday morning in his closed garage; yet Dr. R. C. Shepard, medical examiner for Walker County and a witness for the defendants, testified that he did an autopsy on the body of the insured the day he died; that he sent his liver, kidneys, stomach and some of his blood to the Georgia Crime Laboratory and requested that they be examined for carbon monoxide and other poisons; and from his autopsy and the findings of the crime laboratory which were negative for carbon monoxide or any poisons, he could not and would not say that carbon monoxide or any other poison was the cause of his death. On cross examination, he testified that since the report of the crime laboratory

was negative as to the presence in the examined organs of Smith's body of carbon monoxide or any other poison, and since his autopsy failed to show the presence of carbon monoxide or any other poison, it was his opinion Smith's death was due to acute pulmonary edema and acute enlargement of the right side of his heart.

Since the evidence respecting the cause of Smith's death was conflicting and did not demand a finding of suicide, the jury was authorized to find as it did in favor of the plaintiff.

*Judgment affirmed. All the Justices concur.*

SUBMITTED FEBRUARY 9, 1965—DECIDED MARCH 3, 1965— REHEARING DENIED MARCH 16, 1965.

*Gleason & Brown, Frank M. Gleason,* for plaintiffs in error.
*Shaw, Stolz & Fletcher, Irwin W. Stolz, Jr., G. W. Langford,* contra.