## 58687. ATLANTA RECYCLED FIBER COMPANY v. TRI-CITIES STEEL COMPANY et al.

McMURRAY, Presiding Judge.

Atlanta Recycled Fiber Company is in the business of recycling paper, that is, the collection and compression of waste paper into bales for shipment to mills for reprocessing into various useful paper products. In 1974 it was using a storage warehouse for baled paper on a named street in the City of Atlanta which had been purchased in 1969. Sometime prior to November 27, 1974, it had moved a portion of its operations from the storage warehouse to another facility. Following this move, it decided to dismantle a metal shed-type structure attached to the main concrete storage warehouse since that portion of the warehouse was no longer being used to receive paper. The reason for doing so was to render more attractive the possible sale of the warehouse facility. In October 1974, it entered into an oral contract with John S. Dugdale to dismantle and remove the shed-type structure attached to the main concrete warehouse. Subsequent to that date, Dugdale, by oral agreement with Tri-Cities Steel Company, subcontracted a portion of the work in dismantling the shed-type structure.

While Tri-Cities Steel Company was engaged in the final stages of the dismantling and removal of the shed-type structure a disastrous fire occurred on the premises on November 27, 1974, resulting in almost total loss of the warehouse and its contents. Whereupon Atlanta Recycled Fiber Company sued John S. Dugdale

and Tri-Cities Steel Company for damages, alleging the building was destroyed by fire as a result of the negligence of the defendants. The amount of damages it sought was $576,973. It subsequently amended its complaint and sought $621,814.90 which included $25,641.90 for destruction of the contents of its warehouse and $19,200 for destruction of machinery contained in its warehouse.

The defendant Tri-Cities answered, admitting only jurisdiction but otherwise denying the claim; contending further that it was in no way negligent, the occurrence in question was brought about by the negligence of others for whose acts it was not responsible, the plaintiff in the exercise of ordinary care could have avoided the occurrence, the occurrence in question was an accident in legal contemplation, and the loss in question was due to plaintiff's negligence per se in violation of ordinances of the City of Atlanta which were the proximate cause of the loss. The answer of defendant Dugdale, in general, denied the complaint in its entirety.

After discovery and the denial of a motion for summary judgment by defendant Dugdale, the case proceeded to trial before the court and a jury. A verdict was returned finding the defendant Dugdale not liable but finding the defendant Tri-Cities Steel Company negligent per se. The jury awarded the plaintiff damages in the sum of $50,000. The judgment followed the verdict, and plaintiff moved for a new trial which was later amended, heard, and denied. The plaintiff appeals. *Held:*

1. During the trial the plaintiff contended that the building was a total loss. Evidence was offered showing the total cost to repair as approximately $576,000. Plaintiff offered testimony to prove that an employee of the defendant Tri-Cities Steel Company was using an acetylene torch cutting steel beams which were a part of the shed-type structure in order to remove same. It contended that there were no fire protection shields being used around any portion of the warehouse including a metal door near where the cutting was done to insure that molten metal slag from the cutting did not bounce off the loading dock and under a metal door of the warehouse and ignite any combustible materials inside. Further, there were no water hoses in use or available during the cutting

procedure although a water bucket was available. Defendant Dugdale testified that he had been advised by one of the men on the job that in cutting the beam that molten metal had fallen from the loading dock, splattered, and had gone under the metal door, most likely causing the fire since he knew of no other person using an acetylene torch nor did he see or know anything that could have been a possible cause of the fire other than the acetylene torch.

In further proof of its case plaintiff established that the cutting operation was not done pursuant to any safe or proper cutting techniques, and defendant Tri-Cities Steel Company had violated certain ordinances and regulations during removal of the steel beam. An expert testified as to standard welding procedure as having a fire watcher inside and not outside the portion of the building more vulnerable to fire from sparks or molten metal slag, a watcher outside the building being unnecessary, and an operable water hose long enough to reach the area should have been available; and the opening around the metal door below where the welding was done should have been sealed by non-combustible materials, either asbestos or metal sheets. On cross examination the defendants sought to establish by this expert witness that the plaintiff had not complied with portions of the ordinances and regulations previously identified, that is, as having failed to properly maintain the sprinkler system inside the main warehouse, may have failed to have provided and maintained wide aisles between the stacks of baled paper and had allowed baled paper to be stacked along walls to ceilings. However, plaintiff offered testimony to prove the sprinkler system was routinely serviced and at the time of the fire was operational, there being two systems, one in the main building and one in the metal building being removed, the metal building having been "capped off." However, further cross examination disclosed this testimony to be somewhat equivocal since the witness did not know if the sprinkler system had been in any respect dismantled or was still in operation at the time of the fire and that if the system was not operational it would be due to vandals getting into the building.

There was also evidence of the value of the baled

paper in the warehouse (800 tons, solidly packed, two floors substantially filled, 20 feet high, and approximately 15 feet high stacked against the walls in the corner where the fire allegedly occurred). This paper was a total loss (valued at $17,589.40). Baling wire was also lost in the amount of $7,504.55 as well as the baling equipment which was valued at between $19,000 and $21,000.

However, defendants offered in rebuttal an insurance form designated "Sworn Statement In Proof of Loss" executed by a vice-president of the parent company of plaintiff. This exhibit recited the actual cash value of the property destroyed at the time of loss for insurance purposes as $363,871, and the whole total loss and damage as $344,841.90. Defendants contend this indicated a value after the fire of $19,029.10. Other evidence offered in mitigation of damages was as to the old and dilapidated condition of the warehouse such as photographs; the existence of broken windows, rags, trash and dirt inside the warehouse; the condition of the roof, windows and floors; the various acts of vandalism of the building, and the removal of a considerable portion of the electrical system. Other testimony also disclosed the condition and value of the building both before and after the fire. Certain city ordinances were introduced as to the requirement of an operable sprinkler system; that no single pile of baled storage should have more than 25,000 square feet of fiber, exclusive of aisles or clearances; a requirement that baled paper be separated by aisles of not less than five feet in width unless flash fire barriers were used, and a three foot clearance between piles of fibers and the walls of the building. An expert testified that a three foot clearance was required along the side walls of a building, and combustible material should be moved away from an area where a torch was to be used. Further, it was shown that the plaintiff was well aware that in dismantling the metal type shed torches were used prior to the fire.

For purposes of impeachment counsel for defendants was allowed to read in evidence the proof of loss statement as to plaintiff's claim as to the actual cash value of the property at the time of loss for insurance purposes as well

as its claim as to the whole loss and damage. See *Hamrick v. Aetna Ins. Co.,* 122 Ga. App. 278, 279 (2) (176 SE2d 648). Counsel for plaintiff contends that the general rule is that value of property destroyed by fire cannot be proved by the allowance in evidence of proof of loss prepared for insurance purposes in that this type of evidence is not of itself proof of ownership, its destruction or the value of goods destroyed, citing *Southern Ins. & Trust Co. v. A. Lewis & Bro.,* 42 Ga. 587, 594-595 (4); *Travelers Ins. Co. v. Sheppard,* 85 Ga. 751, 765 (12 SE 18); and *Key Life Ins. Co. v. Mitchell,* 129 Ga. App. 192, 193 (2) (198 SE2d 919).

Clearly a proof of loss is held strictly to the fact of showing compliance with the insurance contract but is not in and of itself evidence either of ownership or the destruction or the value of the goods destroyed. See *Security Life & Trust Co. v. Smith,* 220 Ga. 744, 748 (3) (141 SE2d 405); *Key Life Ins. Co. v. Mitchell,* 129 Ga. App. 192, 193 (2), supra.

Here the trial court clearly instructed the jury that this document "was admitted into the case solely for whatever value, if any, it might be in impeaching any evidence, if it does so, that may have been submitted in the case by plaintiff, and not for any other purpose." The allowance of this evidence is consistent with the policy in this state that a party may show anything which in the slightest degree affects the credit of an opposing witness. See *McGriff v. McGriff,* 154 Ga. 560 (4, 5) (115 SE 21); *Camp v. State,* 31 Ga. App. 737, 741 (8) (122 SE 249); *Lightfoot v. Applewhite,* 212 Ga. 136, 137 (3) (91 SE2d 37); *Ayers v. Nichols,* 136 Ga. App. 532 (1) (221 SE2d 835). The trial court did not err in the admission of this evidence for impeachment purposes. See *Hamrick v. Aetna Ins. Co.,* 122 Ga. App. 278, 279 (2), supra.

2. Plaintiff offered and read into the evidence a deposition containing testimony of an expert with reference to an estimate of the cost of restoring the damaged warehouse. The deponent estimated the cost of repairing the warehouse to be approximately $576,000 identifying a letter of estimate of repair cost arrived at by him set forth in an exhibit reflecting the break down of the various costs of the separate items involved in repairing the warehouse. This document was offered in

evidence as an exhibit to which the defendants objected on the grounds that it would constitute a continuing argument to the jury if it were allowed to be taken by the jury to the jury room for their consideration. This document was not offered in evidence as a business record as was the case in *Crosswell v. Arten Const. Co.,* 152 Ga. App. 162 (1979), but as a part of the deposition wherein the deposed witness identified it. Further, the document was cumulative of the witness' oral testimony which had been read in evidence. If, as contended by the plaintiff, it failed to fully examine the deposed witness with reference to the various breakdowns of the cost, this was not the trial court's fault. Since it was an exhibit to the deposition the trial court did not err in refusing to allow it in evidence other than as a memorandum to which the deposed witness had referred to in his testimony. See *State Hwy. Dept. v. Godfrey,* 118 Ga. App. 560, 561 (1) (164 SE2d 340); *Royals v. State,* 208 Ga. 78 (2), 80-82 (65 SE2d 158). It cannot be said that the document was the best evidence of the expert witness' opinion of the cost of reconstruction, but it was his own testimony to that effect and the work sheet which he prepared in order to assist him in presenting testimony. See *Woodward v. City Council of Augusta,* 117 Ga. App. 857, 858 (162 SE2d 304).

3. The next enumeration of error contends the trial court erred in charging the jury concerning the measure of damages by refusing plaintiff's request to charge and giving in substance defendant Tri-Cities' request to charge based upon *Mercer v. J & M Transp. Co.,* 103 Ga. App. 141 (2), 143 (118 SE2d 716). However, it is noted that the trial court marked both requests to charge "no," adding further as to the defendant Tri-Cities' request "but gave these rules of damage in my own charges." Plaintiff's request was that the measure of damages is the cost of restoring the building to its original condition. See *Georgia R. & Banking Co. v. Flynt,* 93 Ga. App. 514, 524 (92 SE2d 330). However, based on the evidence here, the trial court did not err in instructing the jury that with respect to the alleged damage to the building that there were two possible rules, one of which the jury should apply in determining damage, if any, in this case insofar as the

building is concerned and depending upon what the jury found to be appropriate under the instructions of the court. The court then instructed the jury as to the rule as to the cost of restoring the building to its original condition before the fire, which was the substance of the plaintiff's request to charge. The court then instructed the jury that this rule would apply "unless you should find under the evidence that restoration of the building in question to its original condition before the fire would be an absurd undertaking. In determining whether such restoration would be an absurd undertaking you may take into consideration the age of the building, whether it should be repaired or whether it should be completely restored, and any and all other evidence as to the condition of the building in question just preceding the fire in question." If the jury determined that the latter applied, the court then instructed them that "the difference in the fair market value of the building just before and just after the fire in question" would be the measure of damages. As was stated in *Mercer v. J & M Transp. Co.,* 103 Ga. App. 141, 143 (2), supra: "The rationale of damages, as in this case, is to compensate the plaintiff and not to unreasonably burden the defendant beyond the point of compensating the plaintiff." The case sub judice is somewhat similar although on a considerably larger scale as to amount of damages claimed than that of the *Mercer* case. The trial court did not err in charging the jury as above. See also *Southern R. Co. v. Wooten,* 110 Ga. App. 6, 8 (5) (137 SE2d 696); *NEDA Const. Co. v. Jenkins,* 137 Ga. App. 344, 349-350 (4) (223 SE2d 732); *Buhl v. Sandy Springs Medical Ctr.,* 147 Ga. App. 176 (1) (248 SE2d 238); *McCauley v. Boston Old Colony Insurance Co.,* 149 Ga. App. 706, 708-709 (2) (256 SE2d 19).

Nor did the court err in instructing the jury to bear in mind that "the awarding of damages is to compensate the plaintiff for damages sustained, and not to unreasonably burden the defendants beyond the point of compensating the plaintiff." Code § 105-2001. See *Mercer v. J & M Transp. Co.,* 103 Ga. App. 141, 143 (2), supra. It cannot be said here as argued by the plaintiff that the trial court was instructing the jury that they should not

unreasonably burden these two small defendants by awarding the plaintiff a sum of money which these defendants could not afford. Nor was there an implication to the jury that the large corporate plaintiff could better bear the loss. This charge is not subject to the contentions claimed by the plaintiff.

4. Nor did the trial court err in charging the jury the law of comparative negligence, that is, that the defendants contend there was some negligence on the part of the plaintiff "that requires a reduction in the amount of the plaintiff's damages" The court then instructed the jury as follows: "If you find there was such negligence of a defendant or defendants, so as to make one or both defendants liable to plaintiff, and you further find there was some negligence on the part of the plaintiff contributing to plaintiff's loss and damage, but such negligence of the plaintiff was less than defendants' negligence, then I instruct you that this negligence on the part of the plaintiff would not prevent plaintiff's recovery of damages in this case, but would require that you reduce the amount of damages which would otherwise be awarded to plaintiff in proportion to the negligence of the plaintiff compared with that of the defendants." Since both litigants offered evidence that the other had violated the Fire Prevention Code or Building Code of the City of Atlanta, the trial court did not err in also charging the jury that if the plaintiff, "acting through its agents and employees, violated this Fire Prevention Code or Building Code of the City of Atlanta, this would be negligence per se on the part of the plaintiff."

The trial court did not err in further instructing the jury that if they found the plaintiff had violated a municipal ordinance about which the court had instructed the jury "and that such violation proximately contributed to or caused the injury or damage claimed by plaintiff in this case, then it would be your duty to consider such negligence of plaintiff in the light of the other charges made to you by this court." There was evidence offered which authorized the charge as given. See *Douglas v. Rinker,* 134 Ga. App. 949, 951 (216 SE2d 629); *Smith v. American Oil Co.,* 77 Ga. App. 463, 491 (49 SE2d 90). There is no merit in this complaint.

5. Plaintiff next contends that the trial court erred in charging on the law of accident. Plaintiff contends that the record is devoid of any evidence that the fire started as a result of any unexpected or unexplained cause, but the evidence clearly showed that the fire was caused by the negligence of defendant Tri-Cities Steel during its torch operations. The most logical explanation from the evidence presented is that the fire probably was caused by the torch operations, but no definite and positive proof was offered that the fire was a direct result of the torch operations. However, a finding was made by the jury in favor of the plaintiff and that the defendant Tri-Cities Steel was "negligent per se." It is well settled in this state that where a verdict is returned in favor of the plaintiff, it is not reversible error that the trial court charged the jury upon the theory of accident even if the evidence did not support the charge. See *Jackson v. Seaboard Air-Line Railway,* 140 Ga. 277, 283 (6) (78 SE 1059); *Bowen v. Holland,* 184 Ga. 718, 719 (2), 721 (193 SE 233); *Jackson v. Lipham,* 158 Ga. 557, 558 (5) (123 SE 887); *Bell v. Camp,* 109 Ga. App. 221, 222 (2) (135 SE2d 914); *Maloy v. Dixon,* 127 Ga. App. 151, 156 (193 SE2d 19); *Howard v. Gardner,* 128 Ga. App. 545, 546 (2) (197 SE2d 386); *Foster v. Harmon,* 145 Ga. App. 413, 416 (4) (243 SE2d 659). Without deciding whether or not the evidence authorized a charge on the law of accident we find no harmful error.

We do not deem the verdict in favor of the complaining party to be so unreasonably small as indicating a harm which could have resulted from a charge giving defendant the benefit of a defense not authorized by the evidence. The award here was not so infinitesimally small as to say it was due to bias, prejudice, or inadequate. Even though the jury found for the plaintiff and against the defendant Tri-Cities Steel Company as being negligent per se, the exception to the general rule cited above does not apply here. The trial court did not err in denying plaintiff's amended motion for new trial on the grounds that the verdict of the jury was so inadequate as to demonstrate bias, prejudice, mistake, and/or manifest error. See Code §§ 38-102 and 105-2015. *Cox v. Nix,* 87 Ga. App. 837 (1), 838 (75 SE2d 331); *Powers v. Pate,* 107 Ga. App. 25, 27 (1) (129 SE2d 193).

Where there is comparative negligence involved in a case a jury verdict should not be set aside upon the grounds that damages awarded are inadequate for the appellate court has no way of determining the bases for the finding of the award by the jury, particularly where the measure of damages is based upon expert testimony and the jury may give such testimony such weight as it thinks proper. See *Holmes v. Harden,* 96 Ga. App. 365 (100 SE2d 101); *Ocean Acc. & Guarantee Corp. v. Lane,* 64 Ga. App. 149 (1, 2) (12 SE2d 413); *Powers v. Pate,* 107 Ga. App. 25, 27, supra.

*Judgment affirmed. Banke and Underwood, JJ., concur.*

Submitted October 15, 1979 — Decided November 9, 1979.

*Sidney F. Wheeler, Barry S. Mittenthal,* for appellant.

*John D. Jones, Dennis Withers, Frank E. Jenkins, Robert L. Todd,* for appellees.