63086. RAYMAR, INC. v. PEACHTREE GOLF CLUB, INC.

DEEN, Presiding Judge.

Peachtree Golf Club sued the appellant for damage to its golf course resulting from runoff surface water, silt and mud allegedly caused by construction work on the defendant's property. Among other things it was established that so much mud and silt flowed into the plaintiff's land as a result of the defendant's activities in cutting trees, building and grading that a little "island" of mud surfaced within a pond on the golf course. The jury viewed the premises during the trial and eventually returned a verdict in favor of the plaintiff for general and punitive damages and expenses of litigation.

1. *Enumerations of Error 1, 21, 22.*

There was ample evidence of damage to the golf club property from the increased volume of runoff water carrying dirt and debris for an extended period of time, that this was on numerous occasions called to the attention of the defendant, and that it refused to take any of several possible courses of action which would have eliminated or greatly reduced the damage. Although the defendant at one point agreed to pay a contractor selected by the plaintiff for dredging and other ameliorative actions, it actually paid for less than a fourth of the work done. The evidence supported a finding of expenses of litigation based on evidence of bad faith in the defendant's dealings with the plaintiff as well as general and punitive damages because of the aggravated circumstances of the case. We cannot say that the verdict as rendered was the result of bias or prejudice. The case is not controlled by *Southern Bell Tel. &c. Co. v. C & S Realty Co.,* 141 Ga. App. 216, 222 (233 SE2d 9) (1977), where attorney fees were stricken from a verdict because this court held that there was no showing of bad faith or gross negligence. The court there added that the courts have placed a gloss on the requirements of Code § 20-1404 requiring that for the plaintiff to be entitled to attorney fees the jury must award it substantially the figure it named as its damages. This portion of the decision was in fact specifically overruled in *Ga.-Carolina Brick & Tile Co. v. Brown,* 153 Ga. App. 747, 752 (266 SE2d 531) (1980). Where over a lengthy period of time a plaintiff is harassed by a wilful and intentional tort in the form of a continuing trespass, it cannot be said that it must be denied the punitive damages awarded by the jury because it received less than the general damages sued for. It was not error to overrule the motion for new trial on the general grounds.

2. The remaining enumerations of error all deal with jury instructions. We find no error requiring reversal, and accordingly summarize our findings herein, following the appellant's

organization of its brief.

A. *Enumerations 2 and 3.* At no place in the charge did the court express an opinion that the plaintiff had suffered compensable damages. The statement was that one in the defendant's position is liable to one in plaintiff's position for damages incurred.

B. *Enumerations 4, 5 and 16.* A definition of negligence was not necessary. Cost of repairs is in a case like the present one a proper way of assessing damages, especially where the jury has viewed the property. *Payne v. Whiting,* 140 Ga. App. 390, 391 (231 SE2d 796) (1976).

C. *Enumerations 6 and 7.* The instructions here complained of track *City of Columbus, Ga. v. Myszka,* 246 Ga. 571, 573 (272 SE2d 302) (1980) (citations omitted): "In a continuing, abatable nuisance case, the plaintiff is not limited to a recovery of rental value or market value; rather, he may recover any special damages whether the injury is of a temporary or a permanent nature . . . Unlawful interference with the right of the owner to enjoy possession of his property may be an element of damages . . . The measure of damages for 'discomfort, loss of peace of mind, unhappiness and annoyance' of the plaintiff caused by the maintenance of a nuisance is for the enlightened conscience of a jury." Nor was the charge error as not adjusted to the evidence or as allowing a recovery without proof of any legal injury.

D. *Enumerations 8, 9, 20, 23.* The objections to the charge on bad faith as a basis for the award of expenses of litigation was not error because the words *intentional tort* were not defined, or because the defendant "simply" failed to correct the problem. The defendant deliberately refused to take any action or to cease the type of activity which was causing the problem. The circumstances of this case bring it within the ambit of *Ponce de Leon Condominiums v. DiGirolamo,* 238 Ga. 188 (232 SE2d 62) (1977).

Further, damages for a continuing trespass are not in all events limited to those occurring prior to the filing of suit. *Southern Mutual Invest. Corp. v. Langston,* 128 Ga. App. 671 (4) (197 SE2d 775) (1973) and like cases are modified by the ruling in *Cox v. Cambridge Square Towne Houses, Inc.,* 239 Ga. 127 (236 SE2d 73) (1977) where the approach set out in the Restatement of Torts, Sec. 930, is specifically adopted, to the effect that where one causes continuing tortious invasions of the land of another, and it appears that the situation will continue indefinitely, the plaintiff may elect to sue for future damages. This obviously includes those additional damages which have occurred between the time the action was filed and the date of trial, which is the period involved here.

E. *Enumerations 10, 11, 12, 13, 14, 15.*

These lengthy excerpts deal with punitive damages and are

attacked as in effect directing a verdict for the plaintiff, as being incomplete, not defining bad faith and calling for an award of double damages. None of these charges is meritorious. The instructions substantially set out rules of law appearing in *Ponce de Leon Condominiums v. DiGirolamo*, 238 Ga. 188 (2), (3), supra: "[T]estimony as to the appellee's early, persistent, and unheeded complaints which authorizes the verdict for punitive damages in this case also provides authorization for the jury's finding that the appellants acted in bad faith in failing to correct the run-off problem." The statement that "bad faith may be found where a person enters into an agreement with another but does not have an intention to honor the terms of the agreement and subsequently fails to perform as agreed" follows immediately on the statement that "a conscious indifference to the consequences may be defined as the failure to correct a silt or drainage problem after receiving notice of the problem [causing the damages] for which the defendant was responsible." It is also lifted from the *DiGirolamo* case and, while not approved, is not confusing here where it is clear that the defendant did in fact agree to take certain steps to cure the continuing damage and then failed to do so under circumstances which might well authorize an inference of conscious indifference to the consequences.

F. *Enumerations 17, 18, 19.* The appellant argues in its brief that these requests to charge were erroneously omitted because where it testified that a sedimentation pond was not necessary and the plaintiff testified that it was, "the plaintiff was negligent in not proceeding to build the sedimentation pond in order to lessen the damages." The reasoning is erroneous. Had the appellant taken steps to abate the nuisance as it agreed to do the situation would not have occurred.

*Judgment affirmed. Banke and Carley, JJ., concur.*

DECIDED FEBRUARY 18, 1982.

*George Y. Chenggis,* for appellant.
*Mark R. Swanson, Anthony L. Cochran,* for appellee.