**Cheryl Maloof JOHANSEN,
et al., Plaintiffs,**

v.

**COMBUSTION ENGINEERING,
INC., Defendant.**

**Civ. A. No. CV191–178.**

United States District Court,
S.D. Georgia,
Augusta Division.

June 4, 1993.

John Chapman Bell, Jr., William Allen Pannell, Bell & Pannell; and John Minor Botts Lewis, IV, David L. Huguenin Law Office, Augusta, GA, for plaintiffs.

Percy J. Blount, Glover & Blount, P.C.; Thomas Reuben Burnside, Jr., James Walton Ellison, Burnside, Wall, Daniel & Ellison, Augusta, GA; and Samuel N. Frankel, John D. Steel and James J. Brissette, Atlanta, GA, for defendants.

### ORDER

BOWEN, District Judge.

Before the Court is that portion of Defendant Combustion Engineering, Inc.'s, ("Combustion") Motion in Limine that seeks to exclude evidence concerning "[t]he cost of treatment of the alleged injury to Plaintiffs' properties to the extent such cost exceeds the diminution in value of said properties."[1] For the reasons stated below, that portion of Combustion's Motion now under consideration is **GRANTED.**

### I. BACKGROUND

Plaintiffs, all of whom own land surrounding Graves Mountain in Lincoln County, Georgia, assert nuisance and trespass claims arising from the alleged contamination of streams and waters flowing from a now-closed kyanite[2] mine on Graves Mountain, a geological phenomenon in Lincoln County. The Graves Mountain site operated from the mid 1960's until the mid 1980's as an open-face mining operation. Because a large portion of the mountain's face is now exposed, rainwater washes minerals from the mountain and into streams that flow through Plaintiffs' land. According to Plaintiffs, the presence of those minerals lowers the run-off water's pH to harmfully low levels and thereby causes heavy metals to be carried in the water to their lands. Plaintiffs also add that the water from Graves Mountain contains abnormally high sulfate levels attributable to the mine excavations.

As redress for the alleged injuries to their lands, Plaintiffs seek actual damages, the cost to restore their properties and prevent future injury, exemplary damages, expenses of litigation, and injunctive relief. Most relevant to the questions presented by Combustion's Motion in Limine is Plaintiffs' demand that a system of wetlands be constructed to remove the heavy metals and sulfates found in Graves Mountain run-off waters. As explained by Plaintiffs' experts, contaminants would settle in the wetlands area rather than continuing downstream to contaminate Plaintiffs' lands. Plaintiffs estimate that the cost of constructing the demanded wetlands plus

---

1. A motion in limine, as a device for excluding evidence from presentation at trial, is an appropriate vehicle for determining the proper elements of damage. *Battistini v. Hickman & Willey, Inc.*, 1989 WL 89692 (Del.Super.Ct. July 13, 1989) (ruling on motion in limine to exclude damages evidence in excess of diminution in value of land). *See also Leavitt v. Continental Telephone Co. of Maine*, 559 A.2d 786 (Me.1989) (appeal from grant of motion in limine excluding cost to restore trees wrongfully cut from land).

2. Kyanite is a heat resistant mineral used in blast furnaces, Space Shuttle heat tiles, and other high heat areas.

loading and twenty years of maintenance would reach approximately $20 million.[3] Significantly, the estimated aggregate fair market value of Plaintiffs' lands, absent contamination problems, is only $1.347 million. The highest submitted estimation of diminution in value due to contamination is fifty percent.[4]

## II. ANALYSIS

Plaintiffs oppose the exclusion of evidence concerning treatment costs on two grounds: that such evidence is admissible for use in calculating the allowable recovery for injuries to Plaintiffs' lands and, alternatively, that such evidence is relevant in deciding whether Combustion made reasonable clean-up efforts. Each argument is taken in turn.

### A. Admissibility as Damages Evidence

In opposition to Combustion's Motion in Limine, Plaintiffs argue they should be allowed to recover the cost of restoring the land to its original condition and preventing future invasions unless such actions are an "absurd undertaking." Plaintiffs also maintain that whether the twenty-million-dollar cost of constructing wetlands to redress their complaints is an "absurd undertaking" is a question properly left for the jury. Combustion counters that allowing recovery of treatment costs in excess of diminution in value would unduly enrich Plaintiffs. Elaborating, Combustion explains that Plaintiffs' lands have no extraordinary characteristics—e.g., historical value—to justify spending such an enormous sum for treatment. Although Plaintiffs and Combustion are both partially correct—recovery in excess of diminution in value is possible under the appropriate circumstances, but those presented here do not warrant such a recovery—their arguments do not fully address the intricacies of damages for a continuing invasion to land.

■■■ In Georgia, the guiding policy when measuring damages is "to compensate the plaintiff and not to unreasonably burden the defendant beyond the point of compensating the plaintiff." *Mercer v. J & M Transp. Co.*, 103 Ga.App. 141, 143, 118 S.E.2d 716, 718 (1961). In keeping with this policy:

> "As a general rule the measure of damage in actions for injuries to real property is the difference in value before and after the injury to the premises...." The only exception is when there is a more definite, equitable and accurate way by which the damage may be determined.

*Id.* (citation omitted). *See also Southern Mut. Inv. Corp. v. Langston*, 128 Ga.App. 671, 674–75, 197 S.E.2d 775, 778 (1973) (quoting *Mercer*). For damages attributable to a continuing invasion to land, there is "a more definite, equitable and accurate way by which the damage may be determined."

When calculating damages caused by a continuing invasion to land, several elements of damage must be distinguished. First, those damages attributable to past invasions must be separated from those attributable to future invasions. When looking at damages for past invasions, special damages must be included and a further distinction must be made between permanent injuries caused by the past invasion—that is, those that will remain after the invasion is stopped (e.g., erosion)—and those attributable simply to the invasion's existence in the past but that leave no lasting impression on the land (e.g., offensive odors). Because damages for past invasions and damages for future invasions are distinct elements in the calculation of any recovery, it is necessary to analyze Combustion's Motion in Limine separately with respect to past invasions and future invasions.

#### 1. Damages for Past Invasions

■■■ The measure for damages attributable to past invasions generally is special damages plus either (1) diminution in the land's market value, if the injury is permanent, or (2) diminution in the land's yearly rental value for the period during the inva-

---

3. Plaintiffs' $20 million figure includes $1.267 million for construction of wetlands to remove heavy metals and $3.335 million for construction of wetlands to remove sulfates. The remaining costs are allocated to loading and maintenance of the wetlands.

4. This diminution in value figure is based on Combustion's unrebutted estimate that the diminution in value of Plaintiffs' land is no more than fifty percent.

sion's presence and within the statute of limitations, if the injury is only temporary. *Ledbetter Bros., Inc. v. Holcomb,* 108 Ga. App. 282, 285–86, 132 S.E.2d 805, 807 (1963). *See also City of Columbus v. Myszka,* 246 Ga. 571, 573, 272 S.E.2d 302, 305 (1980) (elaborating on allowable special damages). Apparently as an exception to this general rule, several Georgia opinions involving damage to improvements on land explain that restoration costs are an appropriate measure of damages so long as restoration would not be an "absurd undertaking." [5] There is an obvious distinction between improvements to land and the land itself, but Georgia courts have allowed restoration costs as damages for injuries to land as well.[6]

■ Although Georgia courts have allowed the restoration costs as damages for past invasions, no Georgia opinion directly considers whether such a measure is appropriate when the restoration costs exceed the injured land's diminution in value. Absent direct guidance from the Georgia Courts, it is appropriate to rely on the Restatement (Second) of Torts § 929 (1977) (harm to land for past invasions).[7] This is true because § 929 is consistent with existing Georgia law on damages to land and addresses the use of restoration costs when such costs exceed diminution in value.[8] Under § 929:

(1) If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for

(a) the difference between the value of the land before the harm and the value after the harm, *or at his election in an appropriate case,* the cost of restoration that has been or may be *reasonably incurred,*

(b) the loss of use of the land, and

---

**5.** *See Southern Ry. Co. v. Wooten,* 110 Ga.App. 6, 8, 137 S.E.2d 696, 699–700 (1964) (when the injury is to buildings, fences, and improvements to land, the measure of damages ordinarily is the cost of restoration, unless restoration would be an absurd undertaking) (citing *Mercer* ). *See also Atlanta Recycled Fiber Co. v. Tri–Cities Steel Co.,* 152 Ga.App. 259, 264–65, 262 S.E.2d 554, 558 (1979) (warehouse destroyed by fire; damages to be calculated as cost to restore warehouse unless doing so would be an absurd undertaking, in which case the measure of damages should be diminution in value); *Neda Constr. Co. v. Jenkins,* 137 Ga.App. 344, 223 S.E.2d 732 (1976) (cost to repair historic home allowed even though such cost exceeded home's market value by approximately $25,000.00).

**6.** *See Kiel v. Johnson,* 179 Ga.App. 43, 345 S.E.2d 131 (1986) (alteration of water flow caused accumulation of silt and debris; restoration costs allowed as measure of damages); *Raymar, Inc. v. Peachtree Golf Club, Inc.,* 161 Ga. App. 336, 287 S.E.2d 768 (1982) (cost of restoring golf course damaged by flow of water, silt, and mud from construction site allowed as measure of damages; court did not elaborate on relative costs); *Payne v. Whiting,* 140 Ga.App. 390, 231 S.E.2d 796 (1976) (defendant changed flow of water and thereby caused accumulation of sediment in plaintiff's pond; plaintiff built sediment pond to cure, brought suit, and court allowed recovery of cost clear sediment from the original pond—i.e., restoration cost; court did not elaborate on relative costs). *But cf. Whitacker Acres, Inc. v. Schrenk,* 170 Ga.App. 238, 241–42, 316 S.E.2d 537, 540 (1984) (suggesting that restoration costs are not a proper measure of

damages for injuries to land itself—as opposed to improvements only—in cases not involving a continuing trespass).

**7.** The Restatement (Second) of Torts § 929 and the Restatement (First) of Torts § 929, including comments a and b of each section, are substantively the same. *Millers Mut. Fire Ins. Co. v. Wildish Constr. Co.,* 306 Or. 102, 758 P.2d 836, 841 (1988) (noting conclusion after comparing both sections and including Reporter's note comment to the Restatement (Second) of Torts § 929 that "[t]he black letter has been reworded in the interest of clarity").

**8.** Section 929 is employed here because Georgia's Supreme Court probably would apply § 929 to resolve the question presented by Combustion's Motion. When, as here, no state court has decided the question at issue, a federal court must " 'make an educated guess as to how that state's supreme court would rule.' " *Flinktote Co. v. Dravo Corp.,* 678 F.2d 942, 945 (11th Cir.1982) (quoting *Benante v. Allstate Ins. Co.,* 477 F.2d 553, 554 (5th Cir.1973)). The Georgia Supreme Court probably would apply § 929 in addressing the question presented here because § 929 is consistent with previous Georgia case-law—*see, e.g., Wooten* and *Raymar, Inc.*—and the Restatement (First) of Torts § 930. This latter point is significant because, as discussed more fully below, the Georgia Supreme Court adopted § 930 in *Cox v. Cambridge Square Towne Houses, Inc.,* 239 Ga. 127, 236 S.E.2d 73 (1977) (adopting § 930 as a consistent extension of previous Georgia case-law concerning recovery for future invasions to land).

(c) discomfort and annoyance to him as an occupant.

(2) If a thing attached to the land but severable from it is damaged, he may at his election recover the loss in value to the thing instead of the damage to the land as a whole.

§ 929 (emphasis added). The Restatement does not define "an appropriate case" or "reasonably incurred restoration costs," but § 929 comment b elaborates by adding the following qualification:

If ... the cost of replacing the land in its original condition is *disproportionate to the diminution in the value* of the land caused by the trespass, unless there is a reason personal to the owner for restoring the original condition, damages are measured only by the difference between the value of the land before and after the harm.

§ 929 cmt. b.[9]

Some courts applying § 929 use an absolute ceiling on allowable restoration costs (usually either the pre-tort market value or diminution in value),[10] but such a rule is overly rigid. As noted by the Colorado Supreme Court, the multitude of competing factors relevant for crafting an equitable remedy—e.g., historical significance, *see Neda*

*Constr. Co. v. Jenkins*, 137 Ga.App. 344, 223 S.E.2d 732 (1976) (cost to repair historic home allowed even though such cost exceeded home's market value by approximately twenty-five thousand dollars ($25,000.00))—make a rigid rule unworkable:

Indeed, the cases reflect numerous examples of efforts by courts to extricate themselves from the bonds of rigid standards that yielded fair results in the cases that gave them birth, but that lead to perceptively unjust consequences when applied to different facts. *See* Dobbs, *Handbook on Remedies* § 5.1 at 311.

*Board of County Comm'rs v. Slovek*, 723 P.2d 1309, 1315–16 (Colo.1986) (footnote omitted) (refusing to invoke an arbitrary limit on restoration costs where water overflowed onto plaintiff's land and thereby deposited silt and debris, eroded plaintiff's land, and damaged improvements). *Accord Heninger v. Dunn*, 101 Cal.App.3d 858, 864–65, 162 Cal.Rptr. 104 (Cal.Ct.App.1980) (no arbitrary limit; "The overall principles by which the courts are to be guided are 'flexibility of approach and full compensation to the owner, within the overall limitation of reasonableness' "); *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 274 Cal.Rptr. 820, 799 P.2d 1253, 1273 (1990) (en banc) (citing *Heninger* and

9. Section 929 cmt. b provides in full:

Restoration. Even in the absence of value arising from personal use, the reasonable cost of replacing the land in its original position is ordinarily allowable as the measure of recovery. Thus if a ditch is wrongfully dug upon the land of another, the other normally is entitled to damages measured by the expense of filling the ditch, if he wishes it filled. If, however, the cost of replacing the land in its original condition is disproportionate to the diminution in the value of the land caused by the trespass, unless there is a reason personal to the owner for restoring the original condition, damages are measured only by the difference between the value of the land before and after the harm. This would be true, for example, if in trying the effect of explosives, a person were to create large pits upon the comparatively worthless land of another.

On the other hand, if a building such as a homestead is used for a purpose personal to the owner, the damages ordinarily include an amount for repairs, even though this might be greater than the entire value of the building. So, when a garden has been maintained in a city in connection with a dwelling house, the

owner is entitled to recover the expense of putting the garden in its original condition even though the market value of the premises has not been decreased by the defendant's invasion.

10. *See "L" Investments, Ltd. v. Lynch*, 212 Neb. 319, 322 N.W.2d 651, 656 (1982) (where building damaged court refused to prohibit recovery of restoration costs in excess of diminution of value—on grounds such diminution slight but owner entitled to redress for injuries—but set pre-tort market value as absolute ceiling—on grounds "one ought not ... recover a greater amount for partial destruction than one could recover for total destruction"); *Reeser v. Weaver Bros., Inc.*, 78 Ohio App.3d 681, 605 N.E.2d 1271, 1278 (1992) (where water run-off from upstream chicken farm contaminated lake, diminution in value adopted as absolute ceiling for allowable restoration costs; distinguishing contrary view—*Sloveck* and *Thatcher v. Lane Constr. Co.*, 21 Ohio App.2d 41, 254 N.E.2d 703 (1970)—on grounds injured land at issue put to commercial use rather than personal use); *Mikol v. Vlahopoulos*, 86 Ariz. 93, 94, 340 P.2d 1000, 1001 (1959) (diminution in value is ceiling for recoverable restoration costs).

§ 930 with approval while recognizing that recovery in excess of damaged property's value "may be necessary to restore the plaintiff to the position it occupied prior to defendant's wrongdoing").[11]

■ Under the more flexible approach suggested by § 929, comment b, *Sloveck,* and *Heninger,* deciding whether restoration costs are an appropriate remedy requires analysis of all the surrounding circumstances. Disproportionality between restoration costs and diminution in value is the central consideration. For an injured party to recover restoration costs in excess of diminution in value, however, it must show sufficient personal reasons supporting restoration and that repairs actually will be made. *Sloveck,* 723 P.2d at 1316–17; *Heninger,* 101 Cal.App.3d at 865–66, 162 Cal.Rptr. 104. Even upon a showing of personal reasons supporting restoration, the restoration costs still must be reasonable in light of the special considerations presented—that is, given those considerations, they must not be disproportionate to diminution in value. *Sloveck,* 723 P.2d at 1316–17 (also noting, *inter alia,* significance of whether repairing the damage is an efficient allocation of resources); *Heninger,* 101 Cal.App.3d at 865–66, 162 Cal.Rptr. 104.[12] Furthermore, a mere subjective preference for the land in its pre-tort condition is not a sufficient personal reason in support of allowing restoration costs in excess of diminution in value. *Cf. Whitaker Acres, Inc. v. Schrenk,* 170 Ga.App. 238, 316 S.E.2d 537

(1984) (where defendant wrongfully excavated plaintiff's land, court reviewed various rules concerning damage to land, distinguished cases involving. a continuing trespass, and found diminution in value proper measure of damages despite plaintiff's argument that the land was "unique" because it was specially suited for his building needs);[13] *see also Heninger,* 101 Cal.App.3d at 864–65, 162 Cal.Rptr. 104 ($241,000.00 restoration cost unrecoverable as unreasonable where the pre-tort market value was $179,000.00 and the injured party testified as follows concerning his personal reason for restoration: "I think the land is beautiful, the natural forest beautiful, and I would like to see it remain that way").

■ Applying the standards above, Plaintiffs' reasons in support of restoration are insufficient to warrant allowing the recovery of restoration costs in excess of the diminution in value of Plaintiffs' lands. Plaintiffs oppose Combustion's Motion by claiming a personal attachment to their land in its natural, pre-tort condition and, with respect to several parcels, by noting that the land has been in the owner's family for many years. As a general rule, the jury must determine the sufficiency of a party's personal reasons and whether the desired recovery costs are disproportionate.[14] Plaintiffs' personal reasons in support, however, are mere subjective reasons that no reasonable jury could find sufficient—Plaintiffs' have not shown that the land has any significantly unique characteristic or that it is put to any special

---

**11.** *See generally Sloveck,* 723 P.2d at 1316 n. 6 (elaborating on history of and problems with attempts to create a rigid rule for all damages to land).

**12.** *Cf. Rector, Wardens and Vestry of St. Christopher's Episcopal Church v. C.S. McCrossan, Inc.,* 306 Minn. 143, 235 N.W.2d 609 (1975) (where shade tree damaged, § 929 followed to ensure just and equitable remedy); *Battistini v. Hickman & Willey, Inc.,* 1989 WL 89692, at *3 (Del.Super.Ct.1989) (derivation of equitable measure of damages for chemical spill onto land must include disproportion between diminution in value and restoration costs, use of land, owner's personal reasons for restoring, and economic feasibility).

**13.** In doing so, *Schrenk* noted: "The property's uniqueness results only from appellee's subjective evaluation, not from anything intrinsically or

objectively unique about the property itself or about the use to which it might be put"). *Schrenk,* 170 Ga.App. at 242, 316 S.E.2d 537.

**14.** *See Battistini,* 1989 WL 89692, at *4 (whether a use personal to the owner justifies disproportionate cost to restore is for jury) (citing *Farney v. Bestfield Builders, Inc.* 391 A.2d 212, 213–14 (Del.Super.Ct.1978)). *Cf. Atlanta Recycled Fiber Co. v. Tri–Cities Co.,* 152 Ga.App. 259, 264–65, 262 S.E.2d 554, 558 (1979) (affirming jury charge that, unless jury decided repair would be an absurd undertaking, proper measure of damages was cost to repair); *C.S. McCrossan, Inc.,* 235 N.W.2d at 613 (when applying § 929, jury may properly consider both restoration cost and diminution in value); *Leavitt v. Continental Tel. Co. of Me.,* 559 A.2d 786 (Me.1989) (on appeal concerning motion in limine, explaining trial court should have presented evidence of restoration costs to jury).

use sufficient to justify allowing recovery in excess of diminution in value.

### 2. Damages for· Future Invasions

Calculation of damages for future invasions requires deciding whether such damages may be recovered, and, if so, how to measure· them. Before the Georgia Supreme Court's decision in *Cox v. Cambridge Square Towne Houses, Inc.*, 239 Ga. 127, 236 S.E.2d 73 (1977), Georgia courts looked to whether the *invasion* (as opposed to the injury) was permanent [15] or abatable. From that determination, the courts decided if damages for future invasions should be allowed and identified the proper date for statute of limitations purposes.[16] As noted in *Cox*, however:

In 1956, then-Chief Judge Felton remarked: "The cases [distinguishing between permanent and abatable invasions] are very confusing.... I do not know that a definite rule can be gleaned from the decisions...." Twenty-one years have passed since Justice Felton's comment, and after an exhaustive review of the cases it can safely be said that the statement is as true today as when it was written.

*Cox*, 239 Ga. at 128, 236 S.E.2d at 74 (citations omitted).[17]

The *Cox* Court remedied this problem and provided a more definite mechanism for calculating damages for future invasions by adopting the Restatement (First) of Torts § 930 (Damages for Future Invasions). Consequently, under post-*Cox* Georgia law, the rules concerning recovery of damages for future invasions are found in § 930:[18]

---

**15.** "In *Bainbridge Power Co. v. Ivey*, 41 Ga.App. 193, 152 S.E. 306, [1929] cited by Prosser, the court said: 'A permanent nuisance is not necessarily one which can never, under any circumstances, be abated; but it is one whose character is such that, from its nature and under the circumstances of its existence, it presumably will continue indefinitely.' " *Reynolds Metals Co. v. Wand*, 308 F.2d 504, 509 (9th Cir.1962).

**16.** Abatable nuisances also are sometimes referred to as temporary nuisances. Concerning permanent and abatable, temporary nuisances, see generally 1 Fowler V. Harper, Fleming James, Jr., & Oscar S. Gray, *The Law of Torts* § 1.30 (1986), where it is stated that:

In most jurisdictions ... a distinction is made between 'permanent' and 'temporary' nuisances. Where the nuisance is deemed permanent, plaintiff is allowed only a single action and may recover therein all damages—past and future. Where the nuisance is deemed temporary, plaintiff may recover for past damages only, but is allowed to maintain successive suits if the nuisance continues to cause injury. Other legal consequences flow from the distinction. Since each day's continuance of a temporary nuisance creates a new cause of action, the statute of limitations begins to run day by day, and plaintiff may at any time recover for the nuisance committed during the statutory period next before the bringing of the action. But a permanent nuisance at once creates a complete and single cause from the time of the beginning of the nuisance. These different consequences make it practically very important to determine whether a nuisance is permanent or temporary. Uncertainty in the test for the distinction can put the parties in a serious predicament.

**17.** Before *Cox*, Georgia law undeniably provided that under certain circumstances a plaintiff could recover damages for future invasions and was forever barred from bringing a later suit based on the same nuisance whether he actually recovered those future damages or not. *See City Council v. Marks*, 124 Ga. 365, 366, 52 S.E. 539, 540 (1905). It was equally well settled that in other circumstances the plaintiff could only recover damages for past invasions, but that he could bring successive suits to compensate for damages that accrued after the first suit. Conspicuously troublesome before *Cox*, however, was the law's confusion as to when each of the rules above applied.

**18.** Although Defendant argues otherwise, § 930 now is the law in Georgia. When adopting § 930, the Georgia Supreme Court explained that § 930's "approach to dealing with continuing nuisances is both comprehensive and workable, and ... a review of our cases reveals that its application ... [is consistent with existing Georgia case law]. The Restatement approach appears to be the general rule and we adopt it." *Cox*, 239 Ga. at 128–29, 236 S.E.2d at 74. The *Cox* court concerned itself only with subsection one of § 930, but nothing suggests that it intended to adopt only that subsection.

On the contrary, all indications are that the court intended to adopt § 930 in its entirety. Because § 930(2) merely sets forth the measure of damages when the requirements of § 930(1) are met, the two subsections are so closely tied that the Georgia Supreme court likely did not intend to adopt one without the other. Also, the *Cox* court illustrated its adoption of § 930 by citing *Reynolds Metals Co. v. Wand*, 308 F.2d 504

1 Fowler V. Harper, Fleming James, Jr., & Oscar S. Gray, *The Law of Torts* § 1.30 (1986) (footnotes omitted).

(1) Where, by the maintenance of a structure on his own land or by acts and operations thereon, a person causes continuing or recurrent tortious invasions of the land of another, *the other is entitled to recover for future invasions if, and only if, it appears that*

(a) the situation will continue indefinitely and

(b) it is incident to

i. an enterprise affected with a public interest, the operation of which as presently operated will not be enjoined, or

ii. other enterprises if the injured person so *elects*.

(2) The damages for past and prospective invasions of land include

(a) compensation for harm caused by invasions prior to the time when the injurious situation became complete and comparatively enduring and

(b) compensation for

i. the amount of diminution in the value of the land caused by the prospect of the continuance of the invasion measured at the time when the injurious situation became complete and comparatively enduring, or

ii. the reasonable cost to the plaintiff of avoiding future invasions.

§ 930.[19]

Application of § 930's rules for damages attributable to future invasions leads to a result similar to that reached under § 929. Section 930's requirements are set forth in two subsections, § 930(1) and § 930(2); however, Plaintiffs' satisfaction of the former is not at issue. Instead, the central question concerning future damages is whether treatment costs in excess of the diminution in value of Plaintiffs' lands is a "reasonable cost to the plaintiff of avoiding future invasions." *See* § 930(2)(b)(ii). Unfortunately, neither § 930's text nor its comments explain how to identify a reasonable cost of avoiding future invasions. Because this situation is analogous to that presented in § 929, however, it is appropriate to borrow from § 929's analysis for identifying when restoration costs are allowable. Thus, the proportionality between the abatement costs and diminution in value

(9th Cir.1962), as an example in which the provisions of § 930(2) were directly at issue.

Finally, in *Raymar, Inc. v. Peachtree Golf Club, Inc.*, 161 Ga.App. 336, 337, 287 S.E.2d 768, 770, the Georgia Court of Appeals interpreted *Cox* as mandating that when a tortious invasion appears that it will continue forever "the plaintiff may elect to sue for future damages." Because § 930's election and future damages provisions are found in § 930(2), the *Raymar, Inc.* court could only have concluded that § 930 was adopted in its entirety. Thus, under *Cox*, § 930 is now the rule in Georgia.

**19.** When calculating the diminution in value under § 930(2)(b)(i), it is important to note the relevant time period and the proper method for calculating damages for future invasions. As indicated in § 930 itself, "the amount of diminution in the value of the land caused by the prospect of the continuance of the invasion [is] measured *at the time when the injurious situation became complete and comparatively enduring* ...," § 930(2)(b)(i) (emphasis added); rather than, for example, the date on which Plaintiffs filed their Complaint. As explained in the comments to § 930, calculating future damages based on the date the injurious situation became complete and comparatively enduring protects both parties by providing plaintiffs full redress for their injuries while also protecting defendants by ensuring plaintiffs do not delay filing suit simply to collect additional special damages (i.e., for the period between when the injurious situation became complete and comparatively enduring and the date on which plaintiffs filed suit). § 930 cmt. d.

The illustration provided in the Restatement comments is useful in understanding these distinctions:

The A company, making illuminating gas from coal, established its plant near B's extensive greenhouse and florist establishment in 1930. The operations of the gas plant began in 1931 and fumes and smoke invaded the greenhouse and damaged the flowers. This damage, small at first, reached a peak in June, 1932, when the gas plant first began to be operated to full capacity. It has since been carried on at the same level, and the damage to B's business has continued. In 1933 B sues A for damages, and at the trial elects complete compensation, once for all. B's damages will be measured by the loss of flowers and loss of profits down to June, 1932, and in addition, by the difference between what a reasonable purchaser would have given for the property and business in June, 1932, in view of the existing and prospective nuisance, and what he would have given if it were not there. No damages will be given for loss of flowers and profits from June, 1932, down to the time of trial.

Restatement Torts (1st) § 930, cmt. d, illus. 1.

as well as any reasons personal to the owner are relevant to the reasonableness of abatement costs.

As with the § 929 restoration costs, the evidence now before the Court is insufficient to warrant allowing evidence of abatement costs in excess of the diminution in value of Plaintiffs' lands. Consequently, absent Plaintiffs' showing a sufficiently unique characteristic or use of their lands, the measure of damages in this case is:

1. damages for past invasions—calculated as (a) special damages plus (b) any diminution in value of Plaintiffs' lands attributable to permanent injury plus (c) any diminution in rental value of Plaintiffs' lands attributable to temporary injury and within the statute of limitations; and

2. damages for future invasions—calculated as the diminution in value as set forth in § 930(2)(b)(i).

Evidence of treatment costs in excess of the diminution in value of Plaintiffs' lands is not relevant to calculations under this formula, so such evidence is not admissible for damages purposes.

### B. Alternative Basis for Admission

■ Plaintiffs' alternative basis for admission of evidence concerning treatment costs in excess of their lands' diminution in value— i.e., that it is relevant to show the unreasonableness of Combustion's clean-up efforts— fails under Fed.R.Evid. 403. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed.R.Evid. 401. However, even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice...." Fed.R.Evid. 403. "In determining legal relevance under Rule 403, the trial judge has broad discretion, reviewable only for abuse." *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1347 (5th Cir.1978).

In support of this alternative basis for admission, Plaintiffs merely offer a conclusory statement that evidence of the twenty-million-dollar cost to construct and maintain the proposed wetlands will impeach Combustion's evidence concerning reasonableness of its clean-up efforts. In rebuttal to certain of Combustion's arguments, Plaintiffs also assert that a curative instruction to the jury, rather than exclusion, is the appropriate course of action. These arguments are unpersuasive. The relevance of evidence concerning such treatment costs is questionable; however, even if relevant, its patent and substantial prejudicial impact warrants exclusion under Rule 403.

### III. CONCLUSION

For the reasons set forth above, that portion of Combustion's Motion in Limine that seeks to exclude evidence concerning "[t]he cost of treatment of the alleged injury to Plaintiffs' properties to the extent such cost exceeds the diminution in value of said properties" is **GRANTED.** Unless Plaintiffs show a sufficiently unique characteristic or use of their lands, the measure of damages set forth above will be employed. Because that measure of damages does not include treatment costs in excess of the diminution in value of Plaintiffs' lands, evidence of such costs is not relevant to the calculation of damages. Before introducing evidence to show their lands' special characteristics or a special use to which that land is put, Plaintiffs' shall make an **OFFER OF PROOF.** Finally, pursuant to Fed.R.Evid. 403, the evidence at issue **SHALL NOT BE ADMITTED** to show the unreasonableness of Combustion's clean-up efforts.