S03G0592. GEORGIA NORTHEASTERN RAILROAD, INC.
v. LUSK.
(587 SE2d 643)

HUNSTEIN, Justice.

Larry Lusk brought suit against Georgia Northeastern Railroad, Inc. ("GNRR") alleging that his riverside property had been eroded as a result of a nuisance maintained by GNRR. A jury found in favor of Lusk and awarded him $5,400 for the diminution in fair market value of the property before and after the damage and $182,755 for the estimated cost to restore the eroded riverbank. The Court of Appeals affirmed the judgment. *Ga. Northeastern R.R. Co. v. Lusk*, 258 Ga. App. 742 (574 SE2d 810) (2002). We granted certiorari to consider whether the damages awarded constituted an impermissible double recovery and whether cost to repair or restore land is an appropriate measure of damages when that cost is disproportionate to the diminution in value. For the reasons that follow, we reverse the Court of Appeals and remand the case for a new trial on damages.

The evidence at trial established that Lusk owns property along the Etowah River in Cherokee County that he uses for agricultural and recreational purposes. The property is crossed by a GNRR railroad track that spans the river via a bridge owned and maintained by GNRR. The entire tract, as originally purchased, was 94.92 acres; approximately 12.5 acres are situated down river of the bridge. The evidence adduced at trial authorized the jury to find that GNRR allowed debris to accumulate against a bridge pylon and that the

---

large debris pile redirected the natural flow of the river onto Lusk's riverbank. Despite repeated requests by Lusk, GNRR failed to remove the debris. Over the course of several years, the diverted water eroded a 456 foot stretch of riverbank and washed approximately 588,000 cubic square feet of soil, or .6 acre, into the river.[1] The jury was authorized to reject the opinion of GNRR's expert that nothing needed to be done to the riverbank and to find that because of the damage the riverbank sustained as a result of the nuisance GNRR created, Lusk's property would continue to erode into the Etowah unless steps were taken to prevent that occurrence.

> 1. Georgia, as part of its common law and public policy, has always prohibited a plaintiff from a double recovery of damages; the plaintiff is entitled to only one recovery and satisfaction of damages, because such recovery and satisfaction is deemed to make the plaintiff whole.

*Candler Hospital v. Dent*, 228 Ga. App. 421, 422 (491 SE2d 868) (1997). Accord *Central Ga. Power Co. v. Pope*, 141 Ga. 186, 187 (3), (6) (b) (80 SE 642) (1913) ("[a]n owner of land alleged to have been injured can not have a recovery of such a character as to include double damages for the same injury. . . . The different means of measuring damages are not to be so applied as to give double damages for the same thing"). Accordingly, a plaintiff is not entitled to an award of both the diminution in market value and costs to restore for the same injury occasioned by the same trespass and nuisance.

The evidence adduced at trial reflected that as a result of the nuisance GNRR created, 60 percent of one acre of Lusk's property was eroded into the river.[2] Lusk testified that his property was worth between $8,000 and $10,000 per acre. The jury awarded Lusk $5,400, which is precisely 60 percent of $9,000, an award that appears to directly reflect the usable acreage Lusk irreparably lost. The jury also awarded Lusk as the cost of "restoration" the sum of $182,755, which was the precise dollar figure given by GNRR's expert as the cost of stabilizing Lusk's eroded riverbank. This amount did not represent the sum necessary to "restore" Lusk's property to its pre-tort condition, as the testimony at trial was unanimous that the riverbank repair costs did not include any amounts to replace the 588,000 cubic square feet of soil eroded into the river.[3] Rather, the testimony

---

[1] In his testimony Lusk illustrated the amount lost by comparing it to the removal of the top foot of soil off of 13.5 acres of land.

[2] Of course, Lusk remains the title owner to the .6 acre now under water.

[3] Such a possibility was directly refuted by Lusk's witness, who explicitly stated to the jury that he "didn't try to push the . . . repair work out to the original river. We basically are just going to reshape what is there and repair what is there, you know, as opposed to trying to bring in a lot of new fill to re-establish where the original riverbank was."

reflected that the sum was necessary to prevent further deterioration of the riverbank and future loss of usable acreage.

Although the particular sums awarded by the jurors in this case indicate that they may not necessarily have returned impermissible double damages, we cannot conclude, given the language in the special verdict the jury was required to use, that the "diminution" award did not also include the decrease in the value of Lusk's land caused by the destabilized condition of the riverbank. Because injury to the riverbank would have been remedied by the jury's award of restoration costs, an improper double recovery may have occurred. Accordingly, the judgment must be reversed.

2. Georgia law recognizes that the cost to repair or restore land may be an appropriate measure of damages as long as restoration would not be an "absurd undertaking." *Atlanta Recycled Fiber Co. v. Tri-Cities Steel Co.*, 152 Ga. App. 259 (3) (262 SE2d 554) (1979); *Southern Ry. Co. v. Wooten*, 110 Ga. App. 6 (5) (137 SE2d 696) (1964). This is true even though repair costs exceed the diminution in value. E.g., *NEDA Constr. Co. v. Jenkins*, 137 Ga. App. 344 (4) (223 SE2d 732) (1976). The cost of restoration may not be disproportionate to the diminution in the property's value. Rather, " 'the cost of repair must be reasonable and bear some proportion to the injury sustained.' [Cit.]" *Empire Mills Co. v. Burrell Eng. &c. Co.*, 18 Ga. App. 253, 256 (89 SE 530) (1916).

As noted above, the award of restoration costs by the jury in this case was not intended to return Lusk to his pre-tort condition because the .6 acre eroded into the Etowah could not reasonably be restored. Rather, the award represented the estimated cost of repairing the riverbank destabilized as a result of the nuisance created by GNRR. The Court of Appeals found the award proportionate to the value of Lusk's 94.92 acres of land; additionally, extensive testimony and documentary evidence were presented to the jury that showed the extent of the damage along the approximately 456 feet of riverbank.[4] Although GNRR contends the restoration award was disproportionate to the diminution award returned by the jury, because the issue of damages must be retried we need not address GNRR's argument.[5]

---

[4] The repair damages would equal approximately $400 per linear foot of riverbank. Photographs of the property and diagrams showed that the bank varied in height.

[5] On retrial the trial court and parties can remedy any possible misunderstanding by the jury that diminution in market value represents solely the value of the eroded 588,000 cubic square feet of soil. See in this regard *City of Atlanta v. Swiney*, 20 Ga. App. 415 (5) (93 SE 24) (1917) (in action for wrongful removal of soil, plaintiff may recover cost of soil removed or diminution in market value caused by soil's removal, but cannot recover for both because the value of the soil is included in diminution in market value caused by the taking).

*Judgment reversed. All the Justices concur, except Fletcher, C. J., who concurs in Division 1 and in the judgment.*

DECIDED OCTOBER 20, 2003.

*Casey, Gilson & Leibel, Matthew D. Williams, Joyce G. Lewis,* for appellant.

*Hasty, Pope & Ball, William G. Hasty, Jr., Marion T. Pope, Jr., Jonathan A. Pope,* for appellee.