A04A1395, A04A1396. CITY OF ROSWELL et al. v. BOLTON (two cases).

(608 SE2d 659)

ADAMS, Judge.

John Bolton filed a nuisance and inverse condemnation action against the City of Roswell and Jere Wood, in his official capacity as mayor of the City, for property damage caused by increased surface and storm water runoff. A jury awarded Bolton $259,100, itemized to include damages for diminution in property value, costs of repair, loss of peace of mind, and attorney fees.[1] The trial court also ordered injunctive relief.

In Case No. A04A1395, the City claims the trial court erred in (i) denying its motion for a directed verdict, (ii) admitting a copy of a City ordinance relating to inspection of storm water management control facilities, (iii) admitting evidence of damages arising prior to six months before Bolton's ante litem notice to the City, (iv) failing to give two requested charges to the jury, and (v) allowing a double recovery. For the reasons set forth below, we find no merit in the City's claims other than its contention that the damages awarded by the jury constituted an impermissible double recovery for costs to restore and diminution in value for the same injury. Accordingly, we affirm in part

---

[1] The jury awarded damages for continuing trespass, continuing nuisance, and inverse condemnation. The trial court entered a judgment in the amount of $179,100 for continuing nuisance, and $80,000 in attorney fees. The jury's continuing nuisance award included (i) $30,000 for diminution in value, (ii) $89,100 for cost to repair the actual damage to Bolton's property, and (iii) $60,000 for aggravation and loss of peace of mind.

and reverse in part and remand the case for a new trial on the issue of damages. In Case No. A04A1396, the City argues that the trial court erred in granting injunctive relief because the City did not maintain a nuisance. We disagree and affirm.

*Case No. A04A1395*

The evidence adduced at trial shows that in 1979, Bolton purchased a house in the City. At that time there was a shallow creek located in the backyard, about 20 to 25 feet from the house, which was narrow enough to step across and shallow enough to be traversed by a bicycle. Area development in the 1980s through the early 1990s caused increased water flow in the stream, and the stream flooded in 1991 after a heavy rainfall. Shortly afterward, Bolton contacted a City engineer who came to look at his property. The City made repairs to storm water detention facilities in the Warsaw Drainage Basin, where Bolton's property was located, and the flooding situation improved significantly from 1991 until construction of the Commerce Parkway.

In 1996, the City and the Georgia Department of Transportation began construction of the Commerce Parkway upstream from Bolton's property. They began laying asphalt in 1998, and construction was completed that year. Bolton had previously contacted the City to express his concern about the effect of the Commerce Parkway on his property, but was assured the project would improve his flooding problem. However, after the commencement of construction on the Commerce Parkway the water flowing through the streambed increased to a four to five foot deep flow when it rained. The increased water flow caused erosion to the streambed and adjoining land and the loss of nine to twelve trees and numerous ferns on Bolton's property. The erosion caused the foundation of Bolton's home to settle and crack, as well as causing cracks to the brick veneer on the exterior of the house. Bolton's rear deck became unstable and had to be torn down.

The City's director of public works, Stuart Moring, testified that the City was responsible for maintaining the storm water management facilities associated with the Commerce Parkway. Moring further testified that all of the storm water runoff from the Commerce Parkway project flowed into the stream bordering Bolton's property. According to Moring, a portion of the runoff flowed into the stream without being held in the detention pond. A water detention pond held another portion of the storm water runoff from the Commerce Parkway, but Moring admitted City engineers found the detention pond located at the Commerce Parkway not to be functioning according to its design.

Moring became aware of Bolton's complaints about storm water runoff in 1998. In 1999, citing stream bank erosion, loss of topsoil, and exposed sewer lines in Warsaw Drainage Basin, Moring submitted an application on behalf of the City for federal funding for "stream bank stabilization" on properties including the Bolton property, but funding was denied. The City did not perform any stream bank stabilization work on Bolton's land.

1. The City claims the trial court erred in denying its motion for a directed verdict because Bolton failed to prove the elements of his nuisance claim. We disagree. "A directed verdict is authorized only when there is no conflict in the evidence on any material issue and the evidence introduced, with all reasonable deductions, demands a particular verdict." (Footnote omitted.) *H. J. Russell & Co. v. Jones*, 250 Ga. App. 28, 28-29 (550 SE2d 450) (2001).

> To be held liable for maintenance of a nuisance, the municipality must be chargeable with performing a continuous or regularly repetitious act, or creating a continuous or regularly repetitious condition, which causes the hurt, inconvenience or injury; the municipality must have knowledge or be chargeable with notice of the dangerous condition; and, if the municipality did not perform an act creating the dangerous condition, . . . the failure of the municipality to rectify the dangerous condition must be in violation of a duty to act.

(Citations omitted.) *Mayor &c. of Savannah v. Palmerio*, 242 Ga. 419, 426-427 (3) (i) (249 SE2d 224) (1978).

In this case, the jury could conclude that the City's construction of the Commerce Parkway and its failure to adequately maintain the drainage system associated with the Commerce Parkway created a condition which subjected Bolton's property to repeated flooding. The jury could also conclude the City was aware of the harmful condition, but failed to rectify it. "[W]here a municipality negligently constructs or undertakes to maintain a sewer or drainage system which causes the repeated flooding of property, a continuing, abatable nuisance is established, for which the municipality is liable." (Citations and emphasis omitted.) *Hibbs v. City of Riverdale*, 267 Ga. 337, 338 (478 SE2d 121) (1996).

The City argues that it was nevertheless entitled to a directed verdict under authority of *City of Atlanta v. MARTA*, 262 Ga. 743 (425 SE2d 862) (1993). The issue in that case was whether a reversible traffic signal was a nuisance. Our Supreme Court concluded that because the signal was not operating in a defective manner and met all applicable national and state traffic standards the signal did not,

as a matter of law, create a continuously hazardous condition amounting to a nuisance. Id. at 746. The City points to testimony in this case indicating that the design of the detention pond associated with the Commerce Parkway met all applicable legal requirements. But even if the detention pond met all applicable standards in its design, evidence shows that the facility did not operate as designed and was discharging water at greater than the pre-development rate. This distinguishes the properly operating traffic signal considered in *MARTA*.

The City cites another traffic signal case, *City of Bowman v. Gunnells*, 243 Ga. 809 (256 SE2d 782) (1979), for the proposition that its degree of misfeasance must exceed that of "mere negligence" in order to subject it to a claim for continuing nuisance. Thus, the City contends, if it was merely negligent in maintaining the detention pond, it could not be held liable for nuisance. But the evidence in this case shows more than "mere negligence," including the City's maintenance of a dangerous condition over a period of time and its failure to correct the condition after knowledge thereof. See *Palmerio*, 242 Ga. at 426-427 (3). Furthermore, the statement that "mere negligence" does not constitute a nuisance is used in *Gunnells* to show that a failure to repair a malfunctioning traffic device within a few hours after its malfunction, even if negligent, does not constitute the maintenance of a nuisance. *Gunnells*, 243 Ga. at 810 (1). As our Supreme Court wrote in *Gunnells*, in order to show a nuisance, "[t]he defect or degree of misfeasance must be to such a degree as would exceed the concept of mere negligence. (A single isolated act of negligence is not sufficient to show such a negligent trespass as would constitute a nuisance.)" (Citation omitted.) Id. at 811 (2). In contrast, evidence in this case showed a repetitive and continuous condition. The trial court properly denied the City's motion for a directed verdict.

2. The City claims the trial court erred in allowing Bolton to introduce Section 7.1.8 (d) of the City's Code of Ordinance, which arguably required the City to establish inspection schedules for all storm water management control facilities in its jurisdiction. The City argues that the introduction of the ordinance was unfairly prejudicial because the City could not be liable for negligent inspection or failure to inspect facilities over which it had no control. See, e.g., *Morris v. Douglas County Bd. of Health*, 274 Ga. 898, 899 (1) (561 SE2d 393) (2002) (Board of Health's single inspection of septic system not sufficient to show creation or maintenance of a nuisance).

The trial court allowed the ordinance to be introduced for purposes of impeachment. On cross-examination, Bolton questioned Moring about the ordinance's inspection requirement in connection with Moring's statement that the City did not inspect storm water

detention facilities after completion other than on a "complaint basis." We conclude the trial court did not abuse its discretion in allowing the ordinance to be used for purposes of impeachment because whether the City had undertaken the responsibility of maintaining drainage facilities affecting the Bolton property was at issue. Furthermore, "[e]vidence tendered for impeachment purposes need not be of the kind or quality required for proving the facts." (Punctuation omitted.) *Atlanta Warehouses v. Housing Auth. of Atlanta*, 143 Ga. App. 588, 590 (1) (239 SE2d 387) (1977).

The City also contends that allowing the ordinance into evidence amounted to "reading law" to the jury. See *Groover v. Dickey*, 173 Ga. App. 73, 76 (8) (325 SE2d 617) (1984) (counsel may not read to the jury from the Code or appellate decisions). Section 7.1.14 (a) of the ordinance contained a list of "legislative findings" which the City asked to be redacted in its entirety. The trial court instructed that references to judicial citations be redacted, as well as a portion the trial court found irrelevant. The remainder included statements such as, "[t]he City has the duty to adequately design, construct, and maintain the drainage system so that its operation does not constitute a nuisance." However, the legislative findings do not purport to be recitations of the law, except perhaps the finding that "by law, the City of Roswell has a municipal drainage system," a matter that was not at issue. After reviewing the nonredacted material, we conclude that its introduction into evidence did not improperly usurp the role of the trial court to communicate the law to the jury. See generally *Conklin v. State*, 254 Ga. 558, 569-570 (10) (b) (331 SE2d 532) (1985) (the jury shall receive the law from the trial judge). We find no error.

3. The City claims the trial court erred in allowing Bolton to introduce evidence of flood events before October 9, 1998, the date six months before his ante litem notice to the City. We disagree.

OCGA § 36-33-5 (b) requires a claimant to give written notice to a municipality of a suit for damages to person or property "[w]ithin six months of the happening of the event" upon which the claim is based. See *Cundy v. City of Smyrna*, 264 Ga. App. 535, 536 (591 SE2d 447) (2003). "[A] property owner who incurs damage as a result of a continuing nuisance or trespass maintained by a municipality is entitled, within the four-year period of limitations, to recover only those damages incurred during the six months preceding the giving of [the notice required by OCGA § 36-33-5]." *City of Chamblee v. Maxwell*, 264 Ga. 635, 637 (452 SE2d 488) (1994). In view of the foregoing, the City contends that it was unfairly prejudiced by the admission of evidence showing that Bolton was damaged by floods occurring before October 9, 1998.

The trial court instructed the jury that although they had heard evidence of events occurring before October 9, 1998, they may not

award damages for events that happened before that date, and further informed the jury that evidence of anything that occurred before October 9, 1998, was admitted "for the purpose of showing notice to the City of the condition, whether it existed or not." Evidence of flooding before October 9, 1998, was relevant to the issue of bad faith and the award of attorney fees. See OCGA § 13-6-11; *City of Gainesville v. Waters*, 258 Ga. App. 555, 559 (4) (574 SE2d 638) (2002) (evidence of bad faith shown by city's refusal to alleviate drainage problems despite knowledge of flooding to plaintiff's property); *Raymar, Inc. v. Peachtree Golf Club*, 161 Ga. App. 336, 338 (2) (287 SE2d 768) (1982) (testimony of plaintiff's early, persistent, and unheeded complaints provided authorization for finding of bad faith). Furthermore, cases such as *Columbia County v. Doolittle*, 270 Ga. 490, 492 (1) (512 SE2d 236) (1999) and *City of Lawrenceville v. Heard*, 194 Ga. App. 580, 581 (391 SE2d 441) (1990) consider evidence of the relative occurrence of flooding years before the applicable statute of limitation, and such evidence is relevant for purposes of causation. Given the trial court's limiting instruction and the relevancy of the evidence, we find the trial court did not err by admitting evidence of flooding to Bolton's property before October 9, 1998.

4. The City contends that the trial court erred in refusing to instruct the jury on the entirety of its request to charge with respect to the definitions of "ordinary negligence," "gross negligence," and "mere negligence." The City also claims that the trial court erred in failing to give its requested charge that the sole act of approval of a construction project leading to an increase in surface water runoff cannot be the basis of any liability on its part. "A request to charge must be correct, legal, apt, and precisely adjusted to some principle in the case." *Tumlin v. State*, 264 Ga. App. 565 (591 SE2d 448) (2003). "The trial court's failure to give a jury charge in the exact language requested is not error where the charges actually given substantially cover the principles contained in the request." (Footnote omitted.) *Nails v. Rebhan*, 246 Ga. App. 19, 22 (3) (538 SE2d 843) (2000).

The trial court instructed the jury as to "ordinary negligence." The trial court also charged the jury that "mere negligence is insufficient to constitute a nuisance." The City claims that the trial court's decision to charge the jury only as to "ordinary negligence" was inadequate. Setting aside Bolton's contention that the City waived the right to object to the charge given, we find no error.

The City's requested charge defined ordinary negligence and gross negligence and then instructed that "[m]ere negligence includes both ordinary and gross negligence." We conclude that the requested charge was not precisely adjusted to the principles of the case because Bolton asserted claims of continuing nuisance and trespass and inverse condemnation, and introducing the concept of

gross negligence was potentially confusing to the jury. Furthermore, the courts have generally used the phrase "mere negligence" to differentiate negligence from other types of conduct, as opposed to constituting a distinct type of negligence, which is suggested by the requested charge. Indeed, the authority which the City cites as defining "mere negligence" illustrates this point. See *Artzner v. A & A Exterminators*, 242 Ga. App. 766, 772 (3) (531 SE2d 200) (2000) (mere negligence, although gross, will not authorize the recovery of punitive damages; there must be aggravating or outrageous circumstances).

The trial court also refused to give the City's requested charge that "[t]he sole act of a city's approval of a construction project which leads to an increase in surface water runoff cannot be the basis of any liability on the part of the city for creating or maintaining a nuisance." For this principle, the City relied on *Hibbs v. City of Riverdale*, 267 Ga. at 337, in which our Supreme Court wrote that:

> [T]he *sole* act of approving a construction project which leads to an increase in surface water runoff cannot impose liability for creating or maintaining a nuisance. However, where a municipality negligently constructs or undertakes *to* maintain a sewer or drainage system which causes the *repeated* flooding of property, a continuing, abatable nuisance is established, for which the municipality is liable.

(Citations omitted; emphasis in original.) Id. at 338.

The City's requested charge instructs that a sole act of approval "cannot be the basis of any liability on the part of the city." Arguably, the requested instruction would prohibit the jury from using the City's approval of the Commerce Parkway in any consideration leading to liability on the part of the City; including, for instance, whether the approval tended to show the City was responsible for maintaining the associated drainage facilities. The suggested instruction is not strictly consistent with the principle, as stated in *Hibbs*, that a sole act of approval "cannot impose liability." Id. "If *any portion* of the request is inapt or incorrect, denial of the request is proper." (Footnote omitted; emphasis in original.) *Lifestyle Family v. Lawyers Title Ins. Corp.*, 256 Ga. App. 305, 311 (3) (568 SE2d 171) (2002). As the proposed instruction was not precisely adjusted to the principles of the case, the trial court did not err by refusing to give the requested charge.

5. The jury found that "Bolton's property has been diminished in value by acts of the Defendant in the amount of $30,000," and that Bolton is "entitled to compensation for the cost to repair the actual,

physical damage to his property caused by the [City] in the amount of $89,100." The City claims the verdict was an impermissible double recovery. We agree.

Bolton claims the City waived the issue of double recovery on appeal because it did not object to the verdict at trial or raise the issue in a post-trial motion. As a rule, an appellate court will not consider arguments raised for the first time on appeal. See generally *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002). But a claim that a verdict was an impermissible double recovery as a matter of law is an exception to this rule, and we will therefore consider the City's arguments. *Nalley Northside Chevrolet v. Herring*, 215 Ga. App. 185, 188 (5) (450 SE2d 452) (1994); *Long v. Marion*, 182 Ga. App. 361, 365 (5) (355 SE2d 711) (1987) (physical precedent only). See, e.g., *Premier Cabinets v. Bulat*, 261 Ga. App. 578, 582-583 (5) (583 SE2d 235) (2003) (award of attorney fees reversed as contrary to law notwithstanding claim of failure to object to the verdict); *Preferred Risk Ins. Co. v. Boykin*, 174 Ga. App. 269, 277 (10) (329 SE2d 900) (1985) (award of exemplary damages was found improper as matter of law and reversed although parties failed to object to verdict); *Witty v. McNeal Agency, Inc.*, 239 Ga. App. 554, 560 (3) (b) (521 SE2d 619) (1999) (if basis for objection to verdict is not double recovery, change of the award by the trial court after dispersal of the jury, or the award of punitive damages without actual damages, then the objection to the judgment must be raised in the trial court in a motion for directed verdict, j.n.o.v., or new trial, or it is waived).

The City relies on *Ga. Northeastern R. v. Lusk*, 277 Ga. 245 (587 SE2d 643) (2003) (*Lusk II*) to show a double recovery here. In *Ga. Northeastern R. Co. v. Lusk*, 258 Ga. App. 742 (574 SE2d 810) (2002) (*Lusk I*) this Court affirmed the award of damages to Lusk in his nuisance action. In *Lusk II*, our Supreme Court reversed and remanded for a new trial on damages because an impermissible double recovery may have occurred, holding that "a plaintiff is not entitled to an award of both the diminution in market value and costs to restore for the same injury occasioned by the same trespass and nuisance." 277 Ga. at 246 (1). In the verdict at issue here, the jury awarded Bolton $30,000 for diminution in value to his "property" and another $89,100 for costs to repair the actual damage to his "property." Based on the form of the verdict, Bolton appears to have received an impermissible double recovery.

Bolton claims the evidence presented with respect to diminution in value was based on damages to his house and did not include the costs of repairs to his stream bank and other property, and there was therefore no recovery for diminution in value and costs to repair for the same injury. We disagree. The only testimony as to diminution in value was that of appraiser John Maggi, who testified the value of

Bolton's property, not accounting for the flooding problems, was $140,000, and the impaired value of the property was in the range of $110,000 to $116,000. This testimony corresponds to the jury's award of $30,000 for diminution in value. Bolton points out that Maggi largely based his valuation on the estimated costs to repair the foundation to the house, which was $15,087, and Maggi did not take into account the costs to repair the stream bank, which was estimated at $52,535. However, the appraiser's valuation applied to Bolton's property as a whole and cannot be directly equated to the costs to repair the house. Maggi was asked "to do a physical inspection of the site and the improvements, and to estimate the market value of that property." Maggi gives his opinion as to the "impaired fair market value or 'as is' of this property," and not simply the residence.[2] The appraiser included what he calls a "risk factor" in his valuation, and so there is no dollar for dollar correlation between the foundation repair costs and the diminution in value. We can only conclude that the evidence of diminution of value of Bolton's property applied to the property as a whole and that the jury's award for diminution in value to Bolton's "property" also applied to the property as a whole. It follows the jury awarded Bolton damages for the loss in fair market value caused by the flooding of the stream bank as well as the cost to repair his property so as to alleviate the flooding, thus making him twice whole.[3] See Lusk II, 277 Ga. at 246 (1) (given language in special verdict form, court could not conclude jury's award for diminution in value did not also include decrease in value caused by destabilized condition of riverbank, which injury would have been remedied by the jury's award of restoration costs). We are therefore constrained to reverse the judgment as to damages and remand the case for a new trial on the issue of damages.

### Case No. A04A1396

The City claims that the trial court erred in granting Bolton injunctive relief in its February 2, 2004 order because the City did not maintain a nuisance. In view of the result in Case No. A04A1395, in which we have ordered a new trial on the issue of damages but have

---

[2] In his appellate brief Bolton admits that he sought recovery at trial for "diminution for fair market value of the property as a whole."

[3] The $89,100 award for the "cost to repair the actual, physical damages to [Bolton's] property" is significantly greater than the $52,535 estimated cost to repair the stream bank and $15,000 estimated cost to repair the damage to the foundation of the house. Although we cannot be sure how the jury arrived at its award, there is no basis for treating the award as other than for the costs to repair Bolton's property as a whole. And if the jury awarded Bolton the costs of restoring his property as a whole it would follow than an additional award for diminution in value based on the "as is" state of the property was an impermissible double recovery.

otherwise rejected the City's claims of error on the issue of its liability for maintaining a nuisance, this contention is without merit. The order must be affirmed.

*Judgment affirmed in part and reversed in part and case remanded for a new trial on the issue of damages only in Case No. A04A1395. Judgment affirmed in Case No. A04A1396. Ruffin, P. J., and Eldridge, J., concur.*

DECIDED NOVEMBER 3, 2004 —
RECONSIDERATION DENIED DECEMBER 14, 2004 —

*Carothers & Mitchell, Richard A. Carothers, William M. Coolidge III*, for appellants.

*Dupree, Poole & King, Russell D. King, Weissman, Nowack, Curry & Wilco, Brian M. Dubuc*, for appellee.