A07A0277, A07A0278. CITY OF ATLANTA v. BROADNAX et al.;
and vice versa.
(646 SE2d 279)

PHIPPS, Judge.

A severe rainstorm on September 21, 2002, resulted in the flooding of streets and homes in an area of southwest Atlanta known as the Booker T. Washington High School (WHS) neighborhood. As a result of the damage caused by the flooding, Brenda Broadnax and other owners of homes in that neighborhood brought this consolidated suit against the City of Atlanta. They charge the city with maintenance of a nuisance resulting from recurrent flooding of the WHS neighborhood through the years due to overflow from the city's combined system for the drainage of sewer water and storm water from the area.

In Case No. A07A0277, the city appeals judgment entered on a jury verdict awarding the homeowners a total of $1,854,300 in damages. In Case No. A07A0278, the homeowners cross-appeal the trial court's denial of their motion for new trial and the court's partial grant of the city's motion for judgment notwithstanding the verdict. Although we find no reversible error in the appeal, we do find error in the trial court's partial grant of the city's motion for j.n.o.v. We, therefore, affirm in the main appeal, and we affirm in part and reverse in part in the cross-appeal.

The WHS neighborhood is located in a water drainage basin designated by the city as the Proctor Creek Basin. The topography of the neighborhood is in the form of a valley, running downhill in a northerly direction. The slope of the valley is interrupted by a man-made berm running parallel to the neighborhood at its northernmost end. At the time of the flooding, the drainage of both sewer water and storm water was controlled and conveyed by a combined system of piping. The largest of the pipes, into which the smaller pipes fed to carry sewer water and storm water away from the neighborhood, was designated as the Greensferry trunk line. It was built in 1915. Currently, it is standard in the industry for storm water drainage systems in urban residential areas to be designed and constructed to convey the run-off from a 25-year rain event. Because the WHS neighborhood is located in a Federal Emergency Management Agency (FEMA) 500-year designated flood plain, it should not be prone to flooding during any rainstorm less than a 500-year event.

*Case No. A07A0277*

1. The city contends that the trial court erred in denying its motions for summary judgment and directed verdict on the homeowners' nuisance claim.

The denial of a motion for summary judgment becomes moot after the case has proceeded to resolution by trial.[1] "[A] jury verdict, after approval by the trial court, and the judgment thereon will not be disturbed on appeal if supported by any evidence, in the absence of any material error of law."[2]

The nuisance claim against the city was grounded on multiple assertions. The homeowners claimed that in the years since the construction of the Greensferry drainage system, there was tremendous growth and development in and around the WHS neighborhood, pursuant to the issuance of building permits by the city; and that this growth led to the addition of impervious materials, such as concrete, blocking the absorption of storm water by natural ground. The homeowners asserted that the city's drainage infrastructure could no longer convey storm water runoff fast enough to prevent flooding of private property during heavy rains, because the existing pipes had not been replaced with larger pipes and the system lacked a sufficient number of storm drain inlets or catch basins to capture surface water. According to the homeowners, the catch basins became clogged during the September 21, 2002 rain as a result of the city's chronic failure to make regular pickups of trash and yard debris in the WHS neighborhood despite continuing complaints by residents. And the homeowners asserted that by acting as a dam preventing the natural runoff of surface water, the berm was another major contributing factor to the flood.

Among other things, the city, in reliance on a line of cases represented by *Foster v. Crowder*,[3] asserted government immunity as a defense. As recognized in *Foster*, "[t]he construction, installation and maintenance of a sewer-drainage system (including that for surface water) is a governmental function of the city[,]"[4] and "in the negligent performance of its governmental duties a municipal corporation is not liable in damages to one who is injured while the municipality is engaged in the performance of such duties."[5] Consequently, as held in *Rogers v. City of Atlanta*[6] and *Johnston v. City of Atlanta*,[7]

[t]he duties of municipal authorities in adopting a general plan of drainage, and in determining when, where, and of

---

[1] *Griffin v. Kangaroo, Inc.*, 208 Ga. App. 190, 191 (2) (430 SE2d 82) (1993).

[2] *Horan v. Pirkle*, 197 Ga. App. 151, 153 (2) (397 SE2d 734) (1990) (citations omitted).

[3] 117 Ga. App. 568 (161 SE2d 364) (1968).

[4] Id. at 568 (1) (citations omitted).

[5] Id. (citation, punctuation and footnote omitted).

[6] 61 Ga. App. 444, 446 (6 SE2d 144) (1939).

[7] 71 Ga. App. 552, 554 (31 SE2d 417) (1944).

what size and at what level drains or sewers shall be built, are of a quasi-judicial nature, involving the exercise of deliberate judgment and wide discretion; and the municipality is not liable for an error of judgment on the part of the authorities in locating or planning such improvements.[8]

The *Rogers* court was, however, careful to note that the gist of that action was negligence and not nuisance.

A municipal corporation, like any other individual or private corporation, may be liable for damages it causes to a third party from the operation or maintenance of a nuisance, irrespective of whether it is exercising a governmental or municipal function. . . . While it is true that a municipal corporation is not liable for its acts of negligence in discharging a governmental function, yet a municipal corporation cannot, under the guise of performing a governmental function, create a nuisance dangerous to life or health. . . . To be held liable for maintenance of a nuisance, the municipality must be chargeable with performing a continuous or regularly repetitious act, or creating a continuous or regularly repetitious condition, which causes the hurt, inconvenience or injury; the municipality must have knowledge or be chargeable with notice of the dangerous condition; and, if the municipality did not perform an act creating the dangerous condition, . . . the failure of the municipality to rectify the dangerous condition must be in violation of a duty to act.[9]

Therefore, "(w)here a municipality negligently constructs or undertakes to maintain a sewer or drainage system which causes the repeated flooding of property, a continuing, abatable nuisance is established, for which the municipality is liable."[10]

Consequently, in *City of East Point v. Terhune,*[11] where a city was charged with maintenance of a nuisance based on the inability of its drainage system to contain the increase in the flow of rainwater following construction of an apartment complex, the court held that flooding on a single occasion lacked the element of continuousness and recurrence necessary to show negligent trespass constituting a

---

[8] (Citations and punctuation omitted.)

[9] *Mayor &c. of Savannah v. Palmerio*, 242 Ga. 419, 426-427 (3) (249 SE2d 224) (1978) (citations omitted).

[10] *City of Roswell v. Bolton*, 271 Ga. App. 1, 3 (1) (608 SE2d 659) (2004) (citation and punctuation omitted).

[11] 144 Ga. App. 865, 866 (1) (242 SE2d 728) (1978).

nuisance. Later, however, *DeKalb County v. Orwig*[12] held that two instances of sewage backing into the plaintiff's home did constitute an actionable nuisance.

The city argues that there was no evidence to support the homeowners' claim that its sewer and storm water drainage system was a nuisance, pointing to testimony by certain area residents that they had not experienced prior problems with flooding and that no such flood had ever occurred before. This argument is without merit. The homeowners presented evidence that for decades prior to September 21, 2002, WHS neighborhood residents made numerous complaints to the city that streets, yards, and homes in the neighborhood flooded during rain events due in part to the fact that the city's failure to regularly make trash and yard debris pickups resulted in clogged catch basins. And the city's own engineers acknowledged that prior to September 21, 2002, the city was aware that the neighborhood was prone to flooding.

The city next argues that even if negligence on its part was established, the causation element of the nuisance claim was lacking because the evidence indisputably showed that the flood was caused by rainfall so severe as to exceed a 100-year rain event, which urban storm water systems are not required to contain. This argument, too, is without merit. The homeowners presented evidence that rain gauges in the area measured the September 21, 2002 storm as between a 10-year and 25-year rain event, and that the neighborhood's drainage infrastructure was not capable of containing water runoff from even a 10-year rain event.

Insofar as concerns the claim that the damming effect created by the berm contributed heavily to the flooding, the city argues that there is no evidence that it owns (or built) the berm. In response, the homeowners assert that the property upon which the berm sits is owned by the city by virtue of a deed recorded in 1922. They have not, however, cited to where in the voluminous record this deed is found. Nonetheless, they point out that even if the city does not have title to the land, the city would have a legal right of access to land which it does not own for the purpose of maintaining the city drainage system. And even though the city may not have maintained the berm as part of its system or been put on notice of its contribution to flooding in the area, there is evidence from which the jury could have found that the city approved development resulting in increased surface water runoff and maintained other drainage system infrastructure that proved inadequate to contain the runoff while on notice of recurrent

---

[12] 261 Ga. 137, 138-139 (2) (402 SE2d 513) (1991).

flooding in the area. That evidence was sufficient to charge the city with maintenance of a nuisance.

> [T]he sole act of approving a construction project which leads to an increase in surface water runoff cannot impose liability for creating or maintaining a nuisance. However, where a municipality negligently constructs or undertakes to maintain a sewer or drainage system which causes the repeated flooding of property, a continuing, abatable nuisance is established, for which the municipality is liable.[13]

In its defense, the city also relied on evidence showing that in the 1990s it commissioned studies in response to complaints of inadequate storm drainage and flooding by residents in various areas of Atlanta, including the Proctor Creek Basin area. These studies, indeed, found that the flooding problems in the area of the WHS neighborhood were attributable, at least in part, to inadequacies in the storm water-sewer drainage system, such as the size and positioning of catch basins as well as the size of piping. There was evidence that the city was implementing recommendations of the studies in the WHS neighborhood and elsewhere in the metropolitan area to the extent that its resources permit. This evidence, however, related to the question of whether the city was or is complying with its duty to abate a nuisance rather than whether it was responsible for maintenance of one that damaged plaintiffs' homes. The latter question was for the jury. Moreover, the jury could also have found that the city's failure to remove trash and yard debris from the WHS neighborhood, notwithstanding continuing homeowner complaints, was a contributing factor to recurrent flooding that gave rise to a nuisance. Although trash removal is a government function,[14] recovery based on a nuisance as opposed to mere negligence theory is not barred.

For these reasons, the trial court did not err in denying the city's motion for directed verdict.

2. The city charges the trial court with error in refusing to allow it to present evidence critical to its defense.

The evidence which the city sought unsuccessfully to present was that a so-called sewer separation project is currently underway which will remove all wastewater from the combined drainage system in the

---

[13] *Hibbs v. City of Riverdale*, 267 Ga. 337, 338 (478 SE2d 121) (1996) (citations and emphases omitted); see also *Fielder v. Rice Constr. Co.*, 239 Ga. App. 362 (522 SE2d 13) (1999) (physical precedent only); compare *Provost v. Gwinnett County*, 199 Ga. App. 713, 714 (5) (405 SE2d 754) (1991).

[14] *Trussell Svcs. v. City of Montezuma*, 192 Ga. App. 863, 864 (386 SE2d 732) (1989).

Proctor Creek Basin area and put it into a separate line. Counsel for the homeowners stated that he had no objection to the city presenting such evidence for the purpose of showing remediation of the problem of storm-related sewage backups. Counsel stated, however, that the homeowners' major complaint concerned flooding caused by storm water overflow. He objected to presentation of such evidence for the purpose of showing remediation of that problem, because the city had agreed that the project would not correct it (as all but a very small percentage of the water conveyed by the combined system is storm water). In reliance on that agreement, the homeowners had not sought to develop evidence in rebuttal. The trial court ultimately sustained the homeowners' objection based on its finding that the city had entered into such an agreement. Although the agreement itself is not reflected by the record, the city acknowledged at trial that separation of the sewer and storm water lines would not alleviate the flooding problem. We, therefore, find no abuse of discretion in the court's decision to bar admission of the evidence.

3. The city charges the trial court with error in various of its instructions to the jury and in its verdict form.

"When an error in the charge of the court is shown to exist, it is presumed to be prejudicial and harmful, and this court will so hold unless it appears from the entire record that the error is harmless."[15] A trial court has great discretion in formulating the special verdict form it deems appropriate.[16]

(a) The city complains that the court's instruction on the issue of proximate cause could have erroneously led the jury to believe that liability could be predicated solely on a finding of simple or gross negligence by the city.

As do the Suggested Pattern Jury Instructions in Civil Cases,[17] the trial court's jury instruction on proximate cause incorporated the concept of negligence. Specifically, the trial court charged the jury to the effect that the plaintiffs had the burden of proving the element of proximate cause, that negligence alone is insufficient to sustain a recovery, and that a defendant may be held liable for an injury only where he commits a negligent act which is the proximate cause of the plaintiffs' injury. The court then instructed the jury on the three-part definition of nuisance as set forth in *City of Bowman v. Gunnells*.[18]

---

[15] *Foskey v. Foskey*, 257 Ga. 736, 737 (2) (363 SE2d 547) (1988) (citation and punctuation omitted).

[16] *Govt. Employees Ins. Co. v. Progressive Cas. Ins. Co.*, 275 Ga. App. 872, 874 (2) (622 SE2d 92) (2005).

[17] See Suggested Pattern Jury Instructions, Civil Cases, Vol. 1: §§ 60.200-60.210, pp. 263-265 (4th ed., Jan. 2006 update).

[18] 243 Ga. 809, 811 (2) (256 SE2d 782) (1979).

The court thus instructed the jury that, to establish the existence of a nuisance, the plaintiff must show that the defendant committed an act or maintained a defect that was continuous or regularly repetitious, that a single isolated act of negligence is not sufficient, and that the defect or degree of misfeasance must exceed the concept of mere negligence. Therefore, the court's instruction to the jury on the definition of nuisance also incorporated the concept of negligence. But the court further instructed the jury that it would define ordinary and gross negligence only because the term "mere negligence" was used in the legal definition of nuisance and that "[t]his is not a separate negligence case."

Although it was not necessary for the court to provide the jury with the definition of the term "gross negligence" in defining "nuisance," we do not find that aspect of the charge harmful to the city.[19] We do agree with the city that the trial court's use of the term "negligence" in instructing the jury on "proximate cause" was potentially confusing. But because the court later instructed the jury that this was not a negligence case, we do not find that the charge, viewed as a whole, was so confusing as to mandate a reversal.

(b) The city argues that the trial court's instruction on admissions by a defendant was erroneous because it failed to explain the circumstances under which an admission by an agent may be binding on the principal, as explained in *Williams v. City of Social Circle.*[20]

The trial court instructed the jury that elements of a plaintiff's case could be established through admissions of the defendant, that an admission is a statement by a party which tends to aid the cause of the opposing party, and that admissions should be carefully considered. Because the city has not shown the existence of any admissions by any of its agents that would not have been binding on it under the rules set forth in *Williams*, the city has not shown that the jury instruction was deficient.

(c) The city contends that the court erred in instructing the jury that, in calculating its award of damages, it was not to consider evidence that might have been admitted regarding money paid to the homeowners from a collateral source.

"[U]nder the 'collateral source rule' payments made, either voluntarily or contractually, by a third party who was not a joint tortfeasor would not serve to diminish a tortfeasor's liability."[21] The

---

[19] See *City of Roswell v. Bolton*, supra, 271 Ga. App. at 6-7 (4) (where a city sued for maintenance of a nuisance complained of the trial court's *refusal* to include the definition of the term "gross negligence" as well as "ordinary negligence" in its jury charge).

[20] 225 Ga. App. 746 (484 SE2d 687) (1997).

[21] *Crowley v. Trust Co. Bank of Middle Ga.*, 219 Ga. App. 531, 532 (466 SE2d 24) (1995) (citations and punctuation omitted).

city claims that the homeowners received payments from the United States Department of Housing and Urban Development under a program providing home rehabilitation and temporary relocation services administered by the city and that, within the meaning of the collateral source rule, this program did not constitute an "outside collateral source."[22] Our review of the record shows, however, that these so-called payments received by the homeowners were in fact repayable loans. The trial court did not err in instructing the jury that it should not consider such payments in calculating its award of damages to the homeowners.

(d) The city contends that the court erred in instructing the jury on damages.

In pertinent part, the court charged the jury that "[t]he owner or occupier of a dwelling house which he himself occupies" is entitled to compensation for annoyance and discomfort temporarily depriving him of the full use and enjoyment of the premises, in addition to damages for permanent injury to the property, arising from maintenance of a nuisance. The city argues that this charge was erroneous because, in order to be entitled to such dual damages, a party must be the owner *and* occupier of a dwelling rather than the owner *or* occupier.[23] It does not, however, appear from the record that the city excepted to the jury instruction on this ground. And particularly in view of the city's failure to show that there are any homeowners who were not both owners and occupants of their homes, we certainly do not find any error in the charge in this regard to have been so harmful as to be reversible in the absence of an exception.[24]

(e) The city complains that the special verdict form used by the trial court was deficient because it asked whether the city was liable to the plaintiffs as a group rather than individually (although it did provide for awards of damages to the plaintiffs individually); it failed to ask whether the city had met its burden of proof with respect to affirmative defenses; and it permitted awards of damages for loss of use and enjoyment for certain plaintiffs who occupied homes they did not own.

As pointed out by the plaintiffs, however, the city agreed to try these claims in a consolidated fashion, and it does not appear that the city presented any individual defenses; under the court's instructions, the jury necessarily rejected the city's affirmative defenses in finding against it on the issue of liability; and the city has not identified any plaintiffs who were not both owners and occupiers of

---

[22] See id. at 533.

[23] See *Shepherd Constr. Co. v. Vaughn*, 88 Ga. App. 285, 291-292 (5) (76 SE2d 647) (1953).

[24] See OCGA § 5-5-24 (c); *Mack v. Barnes*, 128 Ga. App. 328, 329 (1) (196 SE2d 684) (1973).

the homes in question. Therefore, the city has not shown that the trial court abused its discretion in formulating the special verdict form.

### Case No. A07A0278

4. The homeowners in their cross-appeal contend that the trial court erred in instructing the jury that they were not entitled to recover damages for both the diminution in the value of their property and the costs of repair.

Cases such as *Ga. Northeastern R. v. Lusk*[25] hold that an award of both the diminution in market value and costs to restore for the same injury occasioned by the same nuisance would constitute a double recovery of damages. The homeowners objected to this charge, based on evidence that the repairs to their homes would not bring the properties back to the market value they would have had in the absence of the repairs. In this regard, there was testimony that there is a diminution in the value of a house solely as a result of the stigma of being located in a flood prone area.

As authority in support of their argument that they should have been allowed to seek damages for the diminution in the value of their homes in addition to the costs of repair under these circumstances, the homeowners rely on *State Farm &c. Ins. Co. v. Mabry*.[26] *Mabry* involved automobile insurance policies that required the insurer to compensate policyholders for "loss" to their cars caused by a covered event, while giving the insurer the right to settle a loss by paying to repair or replace the part or property with one of like kind and quality if it determined that the vehicle was not a total loss. The policyholders asserted that in almost every case, a damaged vehicle will suffer a diminution in value regardless of the efficacy of repairs and that the insurer was liable to the policyholder for the amount of that diminution in value. *Mabry* recognized whether diminution in value occurs when physical damage is properly repaired is a question of fact. Based on evidence presented in that case, the trial court in *Mabry* found a potential for a diminution in value even when a vehicle is repaired properly. Because that finding was not clearly erroneous, it was accepted on appeal. *Mabry* further recognized that the question of whether the insurer is required to pay for such diminution in value is a matter of contract construction. Although that question is, therefore, one of law, it is to be determined according to the terms of the contract rather than under general principles governing the

---

[25] 277 Ga. 245, 246 (1) (587 SE2d 643) (2003).
[26] 274 Ga. 498, 502-509 (4) (556 SE2d 114) (2001).

recovery of damages in tort actions. *Mabry* concluded that the insurance policies in that case, as interpreted in accordance with longstanding cases, obligated the insurer to compensate its policyholders for the loss in value if the repair of physical damage from a covered event returned the vehicles to their pre-loss condition in terms of appearance and function without returning the vehicles to their pre-loss value.

A court in at least one other state departed from that state's common law damages rules to allow recovery of damages for both costs of repair and diminution in market value in cases involving insured damage to motor vehicles, based on evidence such as that accepted in *Mabry*.[27] In this state, however, the rule applied by our Supreme Court in *Lusk* remains in place and applies to cases such as this. We are without authority to change it. Accordingly, we hold that the trial court did not err in its jury charge.

5. The homeowners contend that the trial court erred in granting the city's motion for j.n.o.v. as to Bonherer Broadnax and Louise Wyatt based on their failure to put forth any evidence that they served the city with the statutorily required ante litem notice as a condition precedent to filing this suit.

> Under OCGA § 36-33-5 (b), any person having a claim for money damages against a city arising out of injuries to person or property is required to present a claim, in writing, stating the time, place, extent of injury, and the negligence that caused the injury. . . . [T]he giving of notice in the manner and within the time required by the statute is a condition precedent to the maintenance of a suit on the claim.[28]

We find merit in this contention insofar as it concerns Bonherer Broadnax, because it appears from the record that the city stipulated that he had provided ante litem notice. It does not, however, appear that the city stipulated that Louise Wyatt had provided ante litem notice. And although the ante litem notice provided by Wyatt's husband may have been sufficient to apprise the city of Wyatt's loss-of-use-and-enjoyment damage claim,[29] the homeowners have not cited to where in the record Wyatt's husband's ante litem notice

---

[27] See *Rosenfeld v. Choberka*, 529 N.Y.S.2d 455 (N.Y. Sup. Ct. 1988).

[28] *Nicholas v. Van*, 252 Ga. App. 411, 412 (556 SE2d 497) (2001) (citations and punctuation omitted).

[29] Compare *Taylor v. King*, 104 Ga. App. 589 (1) (122 SE2d 265) (1961) (ante litem notice sent to city by plaintiff's insurance carrier sufficient under "substantial compliance" rule), with *Jones v. City Council of Augusta*, 100 Ga. App. 268 (110 SE2d 691) (1959) (ante litem notice of

appears. Thus, the court correctly granted a j.n.o.v. as to the award in favor of Louise Wyatt, but erred in granting a j.n.o.v. as to the award in favor of Bonherer Broadnax.

6. Last, the homeowners argue that the jury's failure to award them attorney fees and litigation expenses under OCGA § 13-6-11, as well as damages for the relocation costs they incurred as a result of being displaced from their homes, necessitated the trial court's grant of their motion for new trial. We find no merit in this argument. Whether the homeowners met any of the preconditions for an award of attorney fees and litigation expenses set forth in OCGA § 13-6-11 was solely a question for the jury.[30] And even though the jury did not award them damages for relocation expenses as such, such damages may have been included within the awards for the loss of the use and enjoyment of their homes. Therefore, we cannot say that the trial court abused its discretion in denying their motion for new trial.[31]

For reasons given in Divisions 1 through 3, we affirm the judgment in the main appeal. For reasons given in Division 5, in the cross-appeal we reverse the trial court's grant of the city's motion for j.n.o.v. with regard to the award of damages in favor of Bonherer Broadnax for loss of the use and enjoyment of his house. For other reasons given in Division 5, and in Divisions 4 and 6, the judgment in the cross-appeal is otherwise affirmed.

*Judgment affirmed in Case No. A07A0277. Judgment affirmed in part and reversed in part in Case No. A07A0278. Johnson, P. J., and Mikell, J., concur.*

DECIDED APRIL 26, 2007 —
RECONSIDERATIONS DENIED MAY 18, 2007 — 

*Linda K. DiSantis, Marc Goncher, Robert N. Godfrey, Clarence Cuthpert, Jr.*, for appellant.
*Martin & Jones, Clinton W. Sitton, Samuel L. Starks*, for appellees.

---

parents' claim for medical expenses and loss of services did not apprise city of child's claim of damages for personal injury and pain and suffering).

[30] *Pritchett v. Rainey*, 131 Ga. App. 521 (206 SE2d 726) (1974).

[31] See generally *Kohl v. Tirado*, 256 Ga. App. 681, 682 (1) (569 SE2d 576) (2002); compare *Tallent v. McKelvey*, 105 Ga. App. 660, 662 (3) (125 SE2d 65) (1962) (grant of motion for new trial required where undisputed evidence showed damages in an amount less than that found by jury, and jury's award of damages was influenced by erroneous jury charge to which there was no objection).