**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**November 22, 2022**

# In the Court of Appeals of Georgia

A22A1642. CITY OF LAWRENCEVILLE v. ALFORD.

MERCIER, Judge.

Jane Alford sued the City of Lawrenceville ("the City") for nuisance relating to storm-water runoff on her property. Following a trial, the jury awarded Alford $425,000 in damages plus $8,742.86 in litigation expenses. The City appeals, arguing that it was entitled to a directed verdict on special damages and litigation expenses. It further claims that the trial court erred in denying its motion in limine to exclude certain evidence from trial. Finding no error, we affirm.

Viewed in the light most favorable to the verdict, see *City of Gainesville v. Waters*, 258 Ga. App. 555, 555 (574 SE2d 638) (2002), the evidence shows that Alford has lived in her Lawrenceville home since 1992. Prior to 2012, Alford experienced no issues with flooding or erosion around the creek that runs through her

front yard. In 2012, however, the City completed a drainage project that piped storm-water runoff from other areas of the neighborhood into the creek. The project involved construction of a new cobblestone headwall on Alford's property at the point where the pipe drained into the creek. The City did not obtain permission to enter her property or to construct a headwall there.

The additional water coming out of the new pipe greatly increased the flow and velocity of the creek, leading to flooding and erosion in Alford's yard. Erosion of the creek bed also destabilized and collapsed part of the headwall. In 2016, Alford and her son informed the City about the increased creek flow, erosion issues, and headwall collapse. City officials denied that the 2012 project directed additional water into the creek. They conceded, however, that the headwall needed repair. Alford asked the City to conduct a hydroflow study regarding the water flow, and officials agreed to perform the study if Alford granted the City an easement to access and repair the headwall. Alford refused, requesting that the study be conducted before she granted the easement. The study was never performed, and the City secured an easement through eminent domain.

In September 2017, the City completed repair work on the 2012 headwall and replaced railroad ties lining the nearby creek bank with a new concrete wall. Unlike

2

the 2012 headwall, the new concrete wall was not cobblestone and thus did not match the existing structure. One City official indicated that the City refused to add cobblestone because Alford had not been cooperative. The City also installed concrete flooring in the creekbed where the pipe emerged from the headwall. The changes created additional water turbulence and erosion during storms, as water coming from the pipe "rocket[ed]" off the concrete flooring and down through the creek. This erosion exposed the roots of several trees, including one that Alford was forced to remove, and began encroaching toward her house. On non-rainy days, when storm-water runoff does not flow through the pipe, pools of stagnant water remain on the concrete floor in the creekbed, leaving a foul smell and attracting mosquitoes.

Alford sued the City in May 2018, alleging claims for nuisance and litigation expenses. At the trial in February 2022, Alford, who was 84 years old at the time, testified that the advancing erosion and damage to her property causes her stress and worry, particularly when the forecast calls for heavy rain. Alford's hydrology and civil engineering expert opined that the wall and concrete flooring installed by the City in 2017 created significant problems on the property. He estimated the cost of repairing the area to be $250,000. In contrast, the City's engineering expert estimated that erosion remediation would cost between $40,800 and $50,600.

3

Based on the evidence presented, the jury found the City liable to Alford for $425,000 "in special damages and/or general damages and/or nominal damages." It also awarded Alford $8,742.86 in attorney fees and expenses. This appeal followed.

1. The City argues that the trial court erred in failing to direct a verdict on Alford's claim for special damages. "A directed verdict is authorized only when there is no conflict in the evidence on any material issue and the evidence introduced, with all reasonable deductions, demands a particular verdict." *City of Roswell v. Bolton*, 271 Ga. App. 1, 3 (1) (608 SE2d 659) (2004) (citation and punctuation omitted). "Where any evidence — even slight evidence — supports the opposing party's case, a directed verdict is improper." *Rivers v. South Auction & Realty*, 351 Ga. App. 179, 183 (2) (830 SE2d 636) (2019) (citation, emphasis, and punctuation omitted).

Although the jury heard evidence regarding the City's 2012 project, Alford's damages claim focused on the 2017 project and injuries that began in September 2017. Alford recognized, and the trial court instructed the jury, that given the timing of her ante litem notice to the City, she could "recover only for damages which she prove[d] by a preponderance of the evidence occurred after September 9, 2017."[1]

---

[1] "A property owner who incurs damage as a result of a continuing nuisance or trespass maintained by a municipality is entitled, within the four-year period of limitations, to recover only those damages incurred during the six months preceding

4

Ultimately, Alford's counsel asked the jury to award $250,000 in special damages to repair the creek area and prevent further erosion; $250,000 in general damages to compensate her for the discomfort, loss of peace of mind, unhappiness, and annoyance caused by the nuisance since September 2017; and $93,000 in attorney fees.

According to the City, Alford offered no evidence that the $250,000 in repair costs she sought related to damages beginning in September 2017. It claims that Alford's engineering expert never "distinguish[ed] between remedial actions designed to mitigate erosion caused by the 2012 Project — which *was not* at issue and *was not* to be considered by the jury for damages purposes — and those intended to address erosion attributable to the 2017 Project, which *was* cognizable." (Emphasis in original). Alford's expert, however, testified about remedial measures required specifically to fix issues resulting from the City's work in September 2017. For example, he asserted that the concrete wall built in 2017 needed to be redesigned and reconstructed to slow the flow of water, which increased in speed when the City installed the wall. The testimony further showed that the 2017 project exacerbated the

the giving of the [ante litem] notice required by OCGA § 36-33-5." *Bolton*, 271 Ga. App. at 5 (3) (citation and punctuation omitted). Alford provided her ante litem notice to the City on March 8, 2018.

5

erosion on Alford's property, and the City's own expert provided a cost for repairing this erosion. At least some evidence, therefore, supported Alford's claim that special damage occurred after September 9, 2017.

The City asserts that the jury also heard evidence relating to damage caused by the 2012 project. But the trial court instructed jurors that they could only award damages incurred after September 9, 2017, and we must presume that the jury followed the trial court's instructions. See *Board of Regents of the Univ. System of Ga. v. Ambati*, 299 Ga. App. 804, 808 (2) (685 SE2d 719) (2009) ("[Q]ualified jurors under oath are presumed to follow the trial court's instructions.") (citation and punctuation omitted). Moreover, the City agreed to a general verdict form that did not specify what type of damages (general, special, or nominal) the jury awarded or how much of the award was allocated to each type.[2] Using this form, the jury granted Alford $425,000, an amount that likely included both special damages *and* general damages for discomfort, loss of peace of mind, unhappiness, and annoyance caused by the nuisance. The measure of such general damages "is for the enlightened conscience of the jury." *Waters*, 258 Ga. App. at 558 (2).

---

[2] In fact, counsel for the City suggested that the trial court put "all the damages together . . . either general, special, or nominal."

6

"In the absence of a verdict form requiring more specificity, the method by which a jury reaches a particular verdict is not a matter of which this Court can take judicial cognizance." *Georgia Clinic, P.C. v. Stout*, 323 Ga. App. 487, 492 (2) (747 SE2d 83) (2013) (citation and punctuation omitted). If the City had wanted the jury to explain the basis for the damages award, it should have objected to the verdict form. It did not do so and thus has waived any objection in this regard. See *Brock v. Douglas Kohoutek, L.P.*, 225 Ga. App. 104, 109 (3) (483 SE2d 342) (1997).

The City has not demonstrated that it was entitled to a directed verdict on Alford's special damages claim or that the jury's award was improper. This claim of error, therefore, lacks merit. See id.; see also *City of Atlanta v. Hofrichter*, 291 Ga. App. 883, 890 (4) (663 SE2d 379) (2008) (upholding a damages award for nuisance because "even though the evidence is such as to authorize a greater or lesser award than that actually made, the appellate court will not disturb it unless it is so flagrant as to shock the conscience") (citation and punctuation omitted): *Nichols v. Main Street Homes*, 244 Ga. App. 591, 594-595 (3) (536 SE2d 278) (2000) (damage award relating to erosion caused by water runoff upheld where plaintiff offered evidence regarding the cost of remedial measures, as well as loss of use and enjoyment of the property).

7

2. Next, the City claims that the trial court should have directed a verdict as to litigation expenses because "there is a total absence of evidence that the City engaged in any bad faith conduct with respect to the 2017 Project." We disagree.

Alford sought an award of litigation expenses pursuant to OCGA § 13-6-11, which authorizes recovery of such expenses "where the defendant has acted in bad faith[.]" It is true that "[b]ad faith warranting an award of attorney fees must have arisen out of the transaction on which the cause of action is predicated" — in this case, the alleged nuisance caused by the 2017 project. *Hofrichter*, 291 Ga. App. at 888 (2) (citation and punctuation omitted). But questions of bad faith are for the trier of fact to determine. See id. And in this case, Alford offered evidence that the City: (1) never conducted a hydrology study in 2017, despite Alford's claim that the 2012 project had caused storm-water runoff on her property; (2) refused to factor into the 2017 project that the 2012 construction had dramatically increased the flow of water on her property; (3) failed to include certain work in the 2017 project because she had not been "cooperative;" and (4) did not remediate the continuing erosion and other problems following the construction in 2017. Accordingly, because the record contains some evidence from which the jury could find that the City acted in bad faith

with respect to the 2017 project, the trial court properly denied the City's motion for a directed verdict. See id.; *Waters*, 258 Ga. App. at 560 (4).

3. Finally, the City argues that the trial court erred in denying its motion in limine to exclude all evidence of the 2012 project as irrelevant and prejudicial. We find no reversible error.

(a) Evidence regarding the conditions on the property leading up to the 2017 project — and the cause of those conditions — was relevant to the jury's understanding of the 2017 work. See OCGA § 24-4-401 ("[T]he term 'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). The pre-2017 evidence was also relevant to bad faith, particularly with respect to the City's failure to acknowledge during the 2017 project that problems caused by the 2012 work needed to be addressed. See *Bolton*, 271 Ga. App. at 6 (3) (evidence of flooding prior to ante litem notice deadline relevant to issue of bad faith and the award of attorney fees). Moreover, the trial court instructed jurors that evidence involving the 2012 project had been admitted only for a limited purpose, reducing the danger of unfair prejudice:

9

You are not to consider this evidence in determining whether the 2017 project created a nuisance or any damages other than attorney's fees. This evidence is only admissible for the limited purpose of determining whether attorney's fees should be awarded.

The trial court did not abuse its discretion in determining that this evidence was relevant, more probative than prejudicial, and admissible at trial. See *Bolton*, 271 Ga. App. at 6 (3); see also *Forsyth County v. Martin*, 279 Ga. 215, 221 (3) (610 SE2d 512) (2005) (trial court's ruling on a motion in limine will be upheld absent an abuse of discretion); OCGA § 24-4-402 (relevant evidence is generally admissible); OCGA § 24-4-403 ("Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]").

(b) We recognize that the relevance of one particular portion of the 2012 evidence — specifically, that the City trespassed on Alford's property during the 2012 project — might have been tenuous. But given the limited purpose for which the evidence was admitted, as well as the trial court's further instruction that "any bad faith must relate to the transaction which forms the basis of the lawsuit," we find that any possible error in its admission was harmless. See *Fulton County v. Morton*, 196 Ga. App. 334, 335 (3) (396 SE2d 65) (1990) (admission of irrelevant but harmless evidence "is not a cause for reversal").

10

*Judgment affirmed. Dillard, P. J., and Markle, J., concur.*